## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DR. LAKSHMI ARUNACHALAM, | ) | Case No.: 1:15-cv-259-RGA |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GEORGE PAZUNIAK, PAZUNIAK LAW | ) | |
| OFFICE LLC, O'KELLY, ERNST & | ) | |
| BIELLI, LLC, and DOES 1 THROUGH | ) | |
| 100, | ) | **DEMAND FOR JURY TRIAL** |
| | ) | **YES** |
| **Defendants** | ) | |

---

## PLAINTIFF'S ANSWERING BRIEF OPPOSING
## DEFENDANTS' MOTION TO DISMISS AND DEFENDANTS' MOTION FOR
## SUMMARY JUDGMENT (D.I, 159, 160, 161)

*Pro Se* Plaintiff Dr. Lakshmi Arunachalam (hereafter "Dr. Arunachalam") respectfully files this Answering brief opposing Defendants' Motions to Dismiss and Summary Judgment (D.I. 159, 160, 161). D.I. 159, 160 and 161 are replete with falsities, detailed below and disputed. There are numerous material facts in dispute and Defendants are not entitled to summary judgment as a matter of law, because their arguments are false, contrary to the law and willfully omit key facts about the record and about the law. Therefore, the Court is not permitted to dismiss said Claims pursuant to FRCP 12(b)(6), 12(b)(1), 12(d) or FRCP Rule 56.

**Disputed Fact No. 1**: Defendants' statements on pp. 11-14, D.I. 160 that "Arunachalam … has ignored the Court's prior rulings… NO CLAIMS STATED AGAINST O'KELLY, ERNST & BIELLI, LLC…There is no other suggestion that O'Kelly was involved in any of the actions… substantially the same RICO case here as in the IBM Litigation…, a resolution adverse to Arunachalam in the IBM Litigation will as a matter of law make her claims here untenable" are false.

Dr. Arunachalam has followed the specific instructions given by Judge Andrews in his Order (D.I. 124, 125) to amend her Complaint. Defendants claim that Dr. Arunachalam's

1

Complaint is not well-pled, after rushing Dr. Arunachalam, ignoring that Dr. Arunachalam had just returned from two months of in-patient medical treatment in Germany with infusion treatment and that Dr. Arunachalam had to file over 50 briefs since her return from in-patient infusion treatment. Dr. Arunachalam requested the Court on an emergency basis (D.I. 155) on August 15, 2016 to give her a few days extra to clean up her Brief that Dr. Arunachalam had been diligently working on and that Dr. Arunachalam was suffering from exhaustion working night and day without any sleep near a stroke. Judge Andrews did not give her the requested extension of time by 8/15/16, hence Dr. Arunachalam had to file work in progress on 8/15/16. Defendants ignore that the Court records show George Pazuniak signed the Court documents in Dr. Arunachalam's cases as George Pazuniak of the O'Kelly, Ernst & Bielli Firm. Defendants ignore substantial facts detailed in Dr. Arunachalam's Second Amended Complaint showing Defendants' misconduct and pattern of racketeering in and through the <u>Delaware Bar Association and ODC</u>. Defendants' misconduct is distinctly separate from and in addition to engaging in and assisting IBM's, SAP's and JPMorgan's racketeering in and through The IBM Eclipse Foundation. Defendants' assertions are false about the facts and the law.

**Disputed Fact # 2: Defendants' statement on pp. 19-20 and 25, D.I. 160 that "… Patent Nos. 5,987,500; 8,037,158; 8,108,492 or 8,346,894… entire point of the IPR and CMB reviews is to determine patent validity that may avoid litigation…"Plaintiff's Malpractice Claims Are Barred By Collateral Estoppel… PTAB decisions holding …patents invalid collaterally estop any malpractice claims relating to those patent…PTAB Invalidations of Pi-Net's Patents Preclude "Fraud #1"… As to "Frauds ## 1 and 2" Pursuant to … Rules 12(d) and 56, Defendants request summary judgment dismissing Arunachalam's fraud counts, because there is no genuine dispute as to any material fact and Defendants are entitled to judgment as a matter of law" is false, contrary to the law and willfully omits key facts about the record and the law.**

There are many material facts in dispute and Defendants are **not** entitled to judgment as a matter of law, as detailed *infra*. Defendants' demand pursuant to Rule 12 or 56 is spurious and must not be granted. Defendants' false arguments are contrary to the law and the facts of the record.

For example, the USPTO/PTAB do ***not*** have the authority to invalidate a patent. Only a Court of law can invalidate a patent. There can be **no** collateral estoppel as a matter of law from any PTAB decision, which <u>cannot</u> invalidate a patent, only a Court can invalidate a patent. If what Defendants are stating falsely is true, then there would be no appeals at the Federal Circuit or Petitions for Writs of Certiorari at the U.S. Supreme Court from PTAB Decisions. The PTAB cases are still ongoing in the PTAB, the Federal Circuit and Plaintiff reserves the right to go to the U.S. Supreme Court. Defendants' statements are contrary to SAP's status report and Dr. Arunachalam's recently filed in 1:12-cv-355-RGA (D.Del.) on 9.29.16 (D.I. 138 pp.1-3 and 137), which states that:

> "On January 20, 2015, Plaintiff Dr. Lakshmi Arunachalam ("Dr. Arunachalam") filed notices of appeal to the Federal Circuit in each of these proceedings. The Federal Circuit docketed the appeal of the IPR proceeding for the '492 patent, IPR2013- 00194, as case 15-1424 on March 9, 2015. The Federal Circuit docketed the appeal of the CBM Review proceeding for the '158 patent, CBM2013-00013, as case 15-1429 on March 10, 2015. The Federal Circuit docketed the appeal of the IPR proceeding for the '500 patent, IPR2013- 00195, as case 15-1433 on March 11, 2015…. On September 23, 2016, the Federal Circuit granted SAP's motions to dismiss the appeals with respect to appeals 15-1424, 15-1429, 15-1433, and 15-1869. Dr. Arunachalam has 90 days from the date of the Federal Circuit's decisions to file a petition for writ of certiorari with the U.S. Supreme Court." (*SAP's status report, D.I. 138, pp. 1-3, 1:12-cv-355-RGA, September 29, 2016*)

Defendants' statements contradict the high court's ruling *in McCormick Harvesting Machine Co. v. C. Aultman & Co.*,169 U.S. 606 (1898), *Marbury v. Madison,* 5 U.S. 137 (1803), *Stern v. Marshall*, 564 U.S. 2 (2011). for the standard and accepted principle that "the question whether a property right may be revoked lies within the exclusive province of the Courts." The U.S. Supreme Court held in *McCormick* that (emphasis added throughout):

> *"The only authority competent to set a patent aside, or to annul it, or to correct it for any reason whatever, is vested in the courts of the United States, and not in the department which issued the patent."*
> "**It has been settled by repeated decisions of this court that when a patent has received the signature of the secretary of the interior, countersigned by the commissioner of patents, and has had affixed to it the seal of the patent office, it has passed beyond the control and jurisdiction of that office, and is not**

3

__subject to be revoked or canceled by the president, or any other officer of the government__. *U. S. v. Schurz*, 102 U. S. 378*; U. S. v. American Bell Tel. Co.,* 128 U. S. 315, 363, 9 Sup. Ct. 90. __It has become the property of the patentee, and as such is entitled to the same legal protection as other property__. *Seymour v. Osborne*, 11 Wall. 516; *Cammeyer v. Newton*, 94 U. S. 225; *U. S. v. Palmer*, 128 U. S. 262, 271, 9 Sup. Ct. 104, citing *James v. Campbell*, 104 U. S. 356."

"__The only authority competent to set a patent aside, or to annul it, or to correct it for any reason whatever, is vested in the courts of the United States, and not in the department which issued the paten__t. *Moore v. Robbins*, 96 U. S. 530, 533; *U. S. v. American Bell Tel. Co*., 128 U. S. 315, 364, 9 Sup. Ct. 90; *Lumber Co. v . Rust*, 168 U. S. 589, 593, 18 Sup. Ct. 208. And in this respect a patent for an invention stands in the same position and is subject to the same limitations as a patent for a grant of lands. The power to issue either one of these patents comes from congress and is vested in the same department. In the case of a patent for lands it has been held that when one has obtained a patent from the government he cannot be called upon to answer in regard to that patent before the officers of the land department, and that the only way his title can be impeached is by suit. *U. S. v. Stone*, 2 Wall. 525, 535; *Mining Co. v. Campbell*, 135 U. S. 286, 10 Sup. Ct. 765; *Noble v. Railroad Co*., 147 U. S. 165, 13 Sup. Ct. 271. But a suit may be maintained by the United States to set aside a patent for lands improperly issued by reason of mistake or fraud, but only in the case where the government has a direct interest or is under obligation respecting the relief invoked. *U. S. v. Missouri, K. & T. R. Co*., 141 U. S. 358, 12 Sup. Ct. 13."

"…did not oust the jurisdiction of any court to which the owner might apply for an adjudication of his rights..."

"…but to attempt to cancel a patent … would be to deprive the applicant of his property without due process of law, and would be in fact an invasion of the judicial branch of the government by the executive."

"__Our conclusion is that, upon the issue of the original patent, the patent office had no power to revoke, cancel, or annul it.__ It had lost jurisdiction over it, and did not regain such jurisdiction…"

Defendants willfully omit that PTAB Judge McNamara holds direct stock in Microsoft, an influential participant and collaborator, directly and through surrogates, in The IBM Eclipse Foundation and failed to recuse and thus deprived Dr. Arunachalam of her due process rights; that he retaliated against Dr. Arunachalam for her asserting her constitutional right to a neutral judge, and was unduly harsh to Dr. Arunachalam; that McNamara threatened to and ruled her patents invalid in the PTAB re-exams initiated by SAP—a founding member of The IBM Eclipse Foundation; that this conflict voids any and all PTAB's decisions on Dr. Arunachalam's patents;

that McNamara recused in August 2016 from SAP's latest CBM petition against Dr. Arunachalam's U.S. Patent 7,340,506, that successfully re-emerged from an IPR re-exam against Microsoft; that his successor lied that Dr. Arunachalam's Motion to Recuse was moot after McNamara had presided over the case; and that the PTAB engaged in civil RICO predicate acts.

This Court must take judicial notice that Defendants mention 4 patents above without including Dr. Arunachalam's U.S. Patent No. 8,271,339 ("'339"), a patent-in-suit in the *Fulton Bank* case 1:14-cv-490-RGA (D.Del.), a virgin patent never been adjudicated in any Court of law or at the PTAB. In the *Fulton court*, Judge Andrews' ruling and Pazuniak's argument on the '339 patent violate the presumption of validity that comes with issued patents, Section 282 of the Patent Act. Judge Andrews and Defendants committed willful obstruction of justice, which makes Judge Andrews a witness and participant in Defendants falsely stating that the '339 patent is collaterally estopped, when it is not. This is the subject of Case No. 16-3663 (U.S. Court of Appeals in the Third Circuit), Plaintiff's Petition for Writ of Mandamus to Disqualify Judge Andrews from presiding over this case. The term "real-time" has been disclaimed away from CGI and email by the inventor in Columns 2, 5 and 7 of the patent specification and can only take on the meaning ascribed to it by the inventor. Judge Robinson's ruling was incorrect, misled by Defendants' and JPMorgan's lies to the Court. *See* Exhibit A attached of Dr. Arunachalam's Corrected Opening Appeal Brief in CAFC 14-1495 for discussion of claim terms, such as "real-time," "VAN switch," "service network" ruled erroneously by Judge Robinson as indefinite or with wrong claim constructions contrary to the facts of the record.

> *"Held*, that where the elements which go to make up the combination of a claim are mentioned specifically and by reference letters, such specific reference operates to confine and restrict the claim to the particular devices described." *McCormick Harvesting Machine Co. v. C. Aultman & Co.*, 63 O.G. 1791, C.D. 1898.
> "In addition to the limitations made necessary by the prior art, the language employed narrows the … claim … to the precise mechanism of the patent. Every

element is restricted by a reference letter to the structure described and shown. A claim so explicit cannot be enlarged by construction." *Perry Mfg. Co. v. Hitchcock Mfg. Co.*, 64 O.G. 860, C.D. 1893.

"The rule is that where the applicant acquiesces in the rejection of claims by the patent office or in a construction which narrows or restricts them, and where the elements which go to make up the combination of the claim are mentioned specifically and by reference letters, leaving no room for question as to what was intended, the claim must be confined and restricted to the particular device described." *Knapp v. Morse*, 65 O.G. 1593, 150 U.S. 221.; *Lehigh Valley R. Co. v Kearney*, 72 O.G. 139, C.D. 1895.

"…**nothing will restrict a pioneer patentee's rights save the use of language in his specifications and claims which permits no other reasonable construction than that he positively intended to limit the scope of his invention to the particular form shown, thus indicating a willingness to abandon to the public any other form**." (58 Fed. Rep. 773.) *McCormick Harvesting Machine Co. v. C. Aultman and Co.*, 73 O.G. 1999, C.D. 1895.

"**A restricted claim as finally formulated by an applicant for a patent and allowed by the office after the rejection of broader claims is strictly binding upon the patentee, and he is precluded from afterward insisting on a broader construction**. *Lane v. Park*, 59 O.G. 788, C.D. 1892. "

"…Whatever the date of the invention, it must be construed with the limitation imposed by the patent office as a condition of the grant." *Shaw Stocking Co. v. Pearson* 58, O.G. 948 C.D. 1892.

"…Where an applicant has acquiesced in the rejection by the patent office of his original claims by submitting amended claims and taking a patent therefor, the court will limit him to a strict construction of the allowed claims." *J.L. Mott Iron Works v. Standard Mfg. Co.*, 59 O.G. 2067, C.D. 1892.

"Where a patentee… inserts in his specification limitations and restrictions for the purpose of obtaining his patent, he cannot, after he has obtained it, claim that it shall be construed as it would have been if such limitations and constructions were not contained in it." Royer v. Coupe, 62 O.G. 318, C.D. 1898."

**Disputed Fact No. 3**: Defendants' statement on pp. 14-15, D.I. 160 that "…Pi-Net has not and cannot assign its legal malpractice claims to Arunachalam…Arunachalam has not plausibly pled her own claims… claims…barred by collateral estoppel…Court Lacks Subject Matter Jurisdiction…Arunachalam Lacks Standing to Assert Pi-Net's Claims… A corporation cannot dissolve or otherwise purport to assign its claims to a pro se individual to circumvent…that the corporation must be represented by counsel" is false.

Defendants admit Plaintiff employed Defendants as the attorney. Plaintiff established that there are many instances of the attorney's neglect of a professional obligation, detailed in the Amended Complaints. For example, Defendants dismissed Plaintiff's patent case against a defendant who filed a DJ action in Ohio which Defendants failed to defend and this resulted in a

substantial loss. Defendants' false arguments do not hold, *infra*. "The following jurisdictions have allowed assignment of legal malpractice claims: the District of Columbia,145 Maine,146 New York,147 Oregon,148 Pennsylvania 149 and Utah.150...The policy considerations are mixed and will exist in different proportions depending on the assignment before the court. The most sensible approach, and the one supported by the case law … is a careful case-by-case analysis." (Alaska Law Rev, Vol. 14, p. 156, 164, 1997). The issue of assigning malpractice claims is case-specific and should be addressed by the Court on a case by case basis by reviewing all the facts. "Today, the original rule of nonassignability has been almost fully abandoned, both by judicial decision and by statute. The assignability of causes of action is now the rule, and nonassignability the exception." 6 AM. JUR. 2D Assignments § 29. Some courts forbade assignment of a cause of action because "**the assignee was not in privity with the person against whom the obligation existed.**"' But this is not so between Dr. Arunachalam and Pi-Net. **Dr. Arunachalam, as 100% owner of Pi-Net, the assignee and real-party-in interest, has been in privity with Pi-Net**. "… 'privity' is defined ... as such an identification of interest of one person with another as to represent the same legal right." BLACK'S LAW DICTIONARY 1199 (6th ed. 1990). Dr. Arunachalam's identification of interest of herself with Pi-Net represents the same legal right. "Other courts based their decisions disallowing assignments on the public policy concern that courts should not be used to enforce any action that hinted at champerty and maintenance." 6 AM. JUR. 2D Assignments § 27 (1963). Champerty is a "bargain between a stranger and a party to a lawsuit by which the stranger pursues the party's claim in consideration of receiving part of any judgment proceeds; it is one type of 'maintenance,' the more general term which refers to maintaining, supporting, or promoting another person's litigation." BLACK'S LAW DICTIONARY 231 (6th ed. 1990).

**Champerty does not apply here with Dr. Arunachalam, as  100% owner  and CEO of her**

**business, Pi-Net**.

""The general test of assignability is whether or not the cause of action will survive;
if the cause of action survives, it is assignable." 28 Survivability, in turn, often
hinges on the nature of the claim, with contractual claims usually surviving and
claims in the nature of a personal tort not surviving. As a result, "[p]ractically the
only [causes of] action which are not assignable are those for … wrongs done to
the person, the reputation, or the feelings of the injured party, and those for breach
of contracts of a purely personal nature, such as promises of marriage."29"

""While the early common law rejected all assignments of a cause of action,
modern courts allow the assignment of causes of action that survive the death of a
party."21 "…the court explained how early English statutes modified the rule of
nonassignability of tort actions to allow the survival of those tort actions involving
damage to real or personal property, but not causes of action for personal injuries."
*Ishmael v. City Electric*, 91 F. Supp. 688, 689-90 (D. Alaska 1950) (applying
Alaska law). "The court concluded that this evolution served to remove restrictions
on assignability of tort causes of action for damage to real or personal property, but
since no statute provided for the survivability for tort causes of action for personal
injury, such causes of action were still not assignable." *Id.* 36" "Alaska statutes now
provide that all causes of action except defamation survive. See ALASKA STAT.
§ 09.55.570 (Michie 1996). Following the reasoning in *Ishmael*…, one might expect
that all causes of action except defamation are now assignable, and that the inquiry
ends here.""The Alaska Supreme Court reversed on the ground that **the
reassignment was permissible because it did not violate public policy**.46 The
court began its analysis by noting that *Ishmael* held that tort actions for personal
injuries are not assignable because they do not survive. Noting that all causes of
action other than defamation now survive in Alaska, the court focused its discussion
on other jurisdictions that based their assignability decisions on public policy, thus
suggesting that it did not consider survivability a determinative test for
assignability. Turning to the public policy concerns, the court explained that some
courts did not allow causes of action for personal injuries to be assigned because
they "'felt that unscrupulous people would purchase causes of action and thereby
traffic in lawsuits for pain and suffering.' 49 The court found that while "this reason
may be sensible in other situations," it didn't make much sense in the case at bar
where the suit was reassigned back to the estate of the deceased employee who
would have had the right to bring it in the first place but for the assignment by
operation of law under the workers' compensation regime." The court found the
reassignment to be "considerably less offensive to us than when an unrelated third
party purchases the rights to such a cause of action."51 "The court concluded that
the main purposes for the general rule of non-assignability of claims for personal
injury, "'to prevent unscrupulous strangers to an occurrence from preying on the
deprived circumstances of an injured person, and to prohibit champerty, **simply
have no applicability where the assignment is to the injured person himself**.""

**Dr. Arunachalam is <u>not</u> an unrelated third party. <u>Defendants' arguments simply have no applicability because the assignment is to the injured person herself</u>. In addition, the Supreme Court has charged courts "'[to] avoid applications of the law which lead to different substantive results based upon distinctions having their source solely in the niceties of pleading and not in the underlying realities.'"'** Jones v. Wadsvorth, 791 P.2d 1013, 1017 (Alaska 1990); *See* Alaska Law Rev, Vol. 14, pp. 141-164, 1997:

> "The Law of Assignment Applied to Legal Malpractice: Many courts, when considering whether a cause of action for legal malpractice should be assignable, struggle with the vestiges of survivability rules and their rationale when trying to resolve the issue. Recall that survivability often hinges on the nature of the claim, with contractual claims usually surviving and claims in the nature of a personal tort not surviving.' Some courts find that legal malpractice is more like a personal tort and deny assignability. Other courts find that legal malpractice is more like a contractual claim and allow assignability. Many courts, however, recognize that legal malpractice actions involve both tort and contract principles, and therefore to base an assignability decision on the nature of the claim would not make much sense. Like any negligence-based tort, to recover for legal malpractice, Plaintiff must prove duty, breach, proximate cause and damages. Yet the attorney's duty is often based on the contractual relationship between attorney and client.5 Courts, recognizing this conflict between tort and contract, are required to turn to public policy to determine whether causes of action for legal malpractice should be assigned. … The Alaska Supreme Court has categorized legal malpractice as a subset of professional malpractice, which in turn has been classified as a hybrid of tort and contract law. 61. **In addition, the Supreme Court has charged courts "'[to] avoid applications of the law which lead to different substantive results based upon distinctions having their source solely in the niceties of pleading and not in the underlying realities.'"'** Jones v. Wadsvorth, 791 P.2d 1013, 1017 (Alaska 1990) (quoting Higa v. Mirikitani, 517"P.2d 1, 4 (Hawaii 1973)).Exercising that charge, the Alaska Supreme Court has itself applied statutes of limitations based on contract law,58 and theories of negligence based on tort law, to professional malpractice cases. 9 Therefore, it is unlikely that the Alaska Supreme Court will rely on the difficult contract/tort distinction to determine assignability. The court will thus need to consider questions of public policy A minority of courts have rejected these arguments in favor of the public policy concerns that counsel in favor of assignment." 61. See infra Part III.A.2.The Alaska Supreme Court's careful evaluation of public policy in *Croxton* suggests that the <u>court will honor Alaska's preference for the assignability of claims and invoke the policies against assignment only in cases where they truly apply</u>."

**A handful of states, however, have upheld assignability. <u>Dr. Arunachalam has had a professional relationship with the attorney and to whom the attorney owed a legal duty.  Dr. Arunachalam has had a prior connection with the assignor, Pi-Net and Pi-Net's rights.</u>** The case law that Defendants cite about California also states, but Defendants omit  that:

> "… <u>economic bidders who have never had a professional relationship with the attorney and to whom the attorney has never owed a legal duty</u>, <u>and who have never had any prior connection with the assignor or his rights</u>… factoring malpractice claims …encourage unjustified lawsuits against members of the legal profession, … promote champerty and force attorneys to defend themselves against strangers. …place an undue burden on … the already overburdened judicial system, …, embarrass the attorney-client relationship and imperil the sanctity of the highly confidential and fiduciary relationship existing between attorney and client.""

**However, this is not the case here. <u>Dr. Arunachalam and Pi-Net are one and the same, and Dr. Arunachalam has had the professional relationship with the attorney and to whom the attorney has owed a legal duty, and has had a prior connection with the assignor or Pi-Net's rights.  This assignment does not promote champerty, and Dr. Arunachalam is not a stranger. This is not an unjustified lawsuit against Defendants. There is no undue burden on the legal system, in this case</u>.**

**<u>Disputed Fact No. 4</u>: Defendants' statement on p. 15, D.I. 160  that "In the pending parallel action between the parties before the Delaware Superior Court, the Court rejected Arunachalam's motion to substitute" is irrelevant and false.**

Defendants keep bouncing back and forth between the Delaware District Court case and the case in the Delaware State Superior Court as and when it suits them, but the State Court case is dependent on what happens in the District Court. Defendants allege the issues before the two Courts are parallel, so the State court case should be transferred to the District Court, in the interest of judicial economy.  Dr. Arunachalam's Complaint against Defendants was made first. George Pazuniak sued Pi-Net, **not** Dr. Arunachalam, first on a false basis, because Dr. Arunachalam complained about him to the ODC about his malpractice.   George Pazuniak did **<u>not</u>** sue Dr.

Arunachalam first, as he falsely claims. **Dr. Arunachalam sued Defendants first**, and in

retaliation, George Pazuniak then added his Law Firm, Pazuniak Law Office as another Plaintiff

and sued Dr. Arunachalam and Pi-Net for libel, only after Dr. Arunachalam had already sued him

in the District Court.

**Disputed Fact No. 5: Defendants' statement on p. 16, D.I. 160 that "…This is the law in California… appears to be governing law in all other … jurisdictions that have considered the issue… public policy forbids the assignment of legal claims to non-attorneys …" is false in its willful omission of facts about the law and the record.**

What law? Defendants cannot make up their own law. §1404(a) is irrelevant to the issues

at hand. Several states have allowed the assignment of legal claims, as detailed in Plaintiff's

arguments in Disputed Fact No. 3, *supra*.  This is part of the obstruction of justice by Defendants.

**Disputed Fact No. 6: Defendants' statement on p. 17, D.I. 160 that "…legal malpractice claims generally cannot be assigned.   California law governs …"Legal malpractice claims are not assignable in Illinois. … ("two major policy concerns … the attorney-client privilege … against third-parties interposing in that relationship.  To sue for legal malpractice, Pi-Net must be a party … otherwise the malpractice claim cannot proceed in the face of the privilege.  Only the client – Pi-Net in this case -- can waive the privilege. Arunachalam can waive that privilege only as an officer for Pi-Net, and not as an individual or personally…" is false, not supported by the law or the facts and is non-factual.**

Dr. Arunachalam is **not** a Third Party interposing in the attorney-client relationship. Pi-

Net's 100% owner and CEO, Dr. Arunachalam, and the inventor and assignee of her patents, is

the one with whom Defendants had the attorney-client relationship.  The retainer agreement was

between Defendants and Dr. Arunachalam, as well as with Pi-Net.  *See* Plaintiff's arguments in

Disputed Fact No. 3, *supra*. Defendants chose that California law does not govern and aggressively

transferred the case to Delaware District Court. Now, they cannot claim that California law

governs.  Defendants' arguments are false that "the malpractice claim cannot proceed in the face

of the privilege." The public policy considerations Defendants cite do not apply in this case, as Pi-

Net and Dr. Arunachalam are one and the same. The issues of protecting attorney-client

confidences and preventing a market for legal malpractice claims do not apply here, as Dr. Arunachalam is neither a Third Party nor an unrelated party. Dr. Arunachalam, as 100% owner and CEO of Pi-Net, is the one with whom the Defendants had the attorney-client relationship.

Defendants' argument that "Only the client – Pi-Net in this case -- can waive the privilege. Arunachalam can waive that privilege only as an officer for Pi-Net, and not as an individual or personally" falls flat on its face. Dr. Arunachalam and Pi-Net are one and the same. Dr. Arunachalam as the inventor and assignee has the full right to assign her patents to her corporation or, as the CEO of the corporation, reassign it back to herself.   Defendants prevented Dr. Arunachalam from hiring any counsel. Defendants thwarted every time Dr. Arunachalam hired counsel or tried to hire counsel. Defendants tortuously interfered with contract and interfered with Dr. Arunachalam's business every time she hired new counsel. When she hired Charlie Kulas, who wrote Dr. Arunachalam's patents, Pazuniak scared him away by threatening him with the word "libel." Defendants scared Mr. Weidner whom Dr. Arunachalam hired as counsel following Defendants thwarting Kulas and caused him to be gone with several emails Pazuniak sent to Mr. Weidner with threats. Defendants citing self-serving emails with John Carpenter, who acted as a front-man for Charlie Kulas, who collects $1M a year from Oracle, evidences the racketeering George Pazuniak committed along with John Carpenter, who lied to the Federal Circuit. Defendants have provided evidence for John Carpenter, Charlie Kulas, and Victoria Brieant to become  DOES 1-3 in this case 1:15-cv-259-RGA (D.Del.) and  Case 1:16-cv-281-RGA (D.Del.). Oracle is a member of The IBM Eclipse Foundation. Kulas, Carpenter and Victoria were hired only to do the Appellate work in Case 14-1495, not for any of the District Court cases. Defendants admit they shared  attorney-client privileged information  related to Dr. Arunachalam's and Pi-Net's District Court cases, in violation of the Delaware Rules of Professional Conduct. Dr.

Arunachalam put George Pazuniak on notice at the time he leaked confidential information to Carpenter. Kulas and Carpenter had not been hired for the *Fulton Bank* case. Pazuniak did not tell Dr. Arunachalam that he had sued Fulton Bank on the '339 patent. Pazuniak was building a relationship with Carpenter to manipulate him to leave, as he attempted to with Weidner, the new appellate counsel for Case 14-1495. Carpenter falsely stated  Pi-Net did not pay its bill, although billed an exorbitant $11K for making entry of appearance, yet he returned the retainer money Pi-Net paid him. Kulas wanted him to leave because Pazuniak used the word "libel." Pazuniak and Carpenter along with Kulas and Brieant willfully colluded to damage Dr. Arunachalam financially and injured Dr. Arunachalam's health.

**Disputed Fact No. 7: Defendants' statement on p. 18, D.I. 160 that "Arunachalam Has Not Properly Pled Her Individual Claims … in Arunachalam's cases…each involved different defendants and defense counsel" is false and non-factual.**

Defendants have presented a garbled recitation of false allegations and are engaged in aggressive obstruction of justice in misleading the Court away from  Defendants' misconduct that "Plaintiff cannot plausibly plead legal malpractice in multiple separate cases by simply making generalized (and false) attacks on counsel, or by citing alleged malpractice that is specific to only one case." See Exhibit A of Dr. Arunachalam's Opening Appeal Brief to CAFC in case 14-1495, which shows the errors made by Judge Robinson, misled by Defendants Pazuniak et al and by JPMorgan. See Exhibit B, Dr. Arunachalam's Letter to Judge Robinson along with her Email Request for Emergency Relief Form. This Court should take Judicial Notice of Dr. Arunachalam's Petition for Writ of Mandamus to Disqualify Judge Andrews from this case, (D.I. 1) in Case 16-3663 (U.S. Court of Appeals for the Third Circuit), due to his joint misconduct with Defendants in the *Fulton Bank* case, precluding Judge Andrews  from presiding in this case. Dr. Arunachalam has indeed pled her individual claims, despite Defendants rushing her in spite of her illness and in-

patient medical treatment for several months. Defendants' misconduct has been detailed by Dr. Arunachalam both in the Original complaint and in the Amended complaint, both of which are incorporated by reference herewith.

   **Disputed Fact No. 8**: **Defendants' statement on pp. 20-21, D.I. 160 that "ABSTENTION PRECLUDES  CAUSE  IV … in view of the earlier-filed parallel litigation in the Delaware state court…upon the termination of their relationship, Pi Net/Arunachalam would not agree to a final distribution of the trust funds.  The impasse forced Pazuniak Law to file a declaratory judgment action to determine the proper distribution… state court … earlier assumed what is effectively in-rem jurisdiction…the state court action was first filed…only the state action can provide complete relief" is false.**

In Judge Andrews' Order (D.I. 124) in this case asking Dr. Arunachalam to amend her complaint, Judge Andrews asked Dr. Arunachalam to file how much money Defendants owe Dr. Arunachalam, under breach of fiduciary duty. Defendants' statement that "the earlier-filed parallel litigation in the Delaware state court" is false. George Pazuniak did **<u>not</u>** sue Dr. Arunachalam first, as he falsely claims. George Pazuniak sued Pi-Net, **<u>not</u>** Dr. Lakshmi Arunachalam in the State court over false allegations, retaliating against Dr. Arunachalam because Dr. Arunachalam complained to the ODC about his malpractice.  **<u>Dr. Arunachalam sued George Pazuniak , Pazuniak Law Office LLC and O'Kelly, Ernst and Bielly, LLC first</u>**, and in retaliation, George Pazuniak sued Dr. Arunachalam and Pi-Net for libel along with Pazuniak Law office LLC without O'Kelly Ernst  and Bielli LLC in the Delaware State Superior Court. Defendants' statement that "upon the termination of their relationship, Pi Net/Arunachalam would not agree to a final distribution of the trust funds" is false. Even long before Dr. Arunachalam and Pi-Net fired Defendants, Pazuniak refused to return Dr. Arunachalam's funds.  The monies in the IOLTA account are not his. Pazuniak has been reimbursed for all the expenses, he has stolen monies from Dr. Arunachalam and from Andy Jardini, another lawyer in another patent case of Dr. Arunachalam. Dr. Arunachalam asked him to return the monies long before "the termination of

their relationship." **Defendants engaged in theft of client funds--a criminal matter for over three years now with Defendants holding Dr. Arunachalam's funds advanced by her personally for expenses, that he, out of revenge and retaliation, has refused to return. Return of these funds is a requirement of the Delaware Rules of Professional Conduct, irrespective of any Court case against or by Defendants.  Judge Andrews, Judge Davis, Ryan Ernst and Sean O'Kelly and Mr. Bielli  must not violate  Rule 8a and must report George Pazuniak to the ODC for theft of Dr. Arunachalam's funds.** Defendants keep bouncing back and forth between the Delaware District Court case and the case in the Delaware State Superior Court as a ploy so as to not return the monies George Pazuniak has stolen from Dr. Arunachalam as a harassment.  The State Court case is dependent on what happens in the District Court case. Ryan Ernst and Sean O'Kelly and Mr. Bielli are colluding and conspiring with George Pazuniak in civil RICO via the conduit of the ODC and Delaware Bar Association, in not reporting George Pazuniak to the ODC  and are in violation of Rule 8a. Defendants admit the issues before the two Courts are parallel, so the State court case should be transferred to the District Court, in the interest of judicial economy.  Defendants are fraudulently trying to invoke Abstention Doctrine, when Pazuniak has engaged in criminal theft of Dr. Arunachalam's funds and has engaged in elder abuse in duping her of her monies.  Arunachalam's Motion in the State Court was to dismiss the Complaint  by Pazuniak and Pazuniak Law Office, LLC  or transfer it to the Delaware District Court to merge with Case 1:15-cv-259-RGA, because it was intended to harass Dr. Arunachalam on false allegations, and  Dr. Arunachalam wrote a letter to Judge Davis that Pazuniak was stalking Dr. Arunachalam and she sought emergency protection from Judge Davis. Pazuniak is aggressively impeding justice in both Courts, he runs away from the District Court to the State Court and runs away from the State Court to the District Court, in his attempt to dupe Dr. Arunachalam, a senior

citizen, of her funds. This is not a State Court issue, but is a criminal matter and anyone colluding with Pazuniak in not returning Dr. Arunachalam's funds in the IOLTA trust account and more monies that Dr. Arunachalam advanced for litigation expenses that Pazuniak has not kept in the IOLTA account but has mingled it with his own funds is violating many laws. The state court had not earlier assumed in-rem jurisdiction, as Pazuniak falsely claims. The state action cannot provide complete relief to this complex series of misconduct by Pazuniak, of theft of Dr. Arunachalam's funds, and the complex civil RICO of intellectual property theft and other RICO predicate acts Defendants are egregiously engaged in, namely: economic espionage and theft of trade secrets (18 U.S.C. §§ 1831 and 1832); retaliating against a witness, victim, or informant (18 U.S.C. § 1513); obstruction of justice (18 U.S.C. § 1503); act or threat involving robbery, extortion, bribery (18 U.S.C. § 201); theft from interstate shipment (18 U.S.C. § 659); extortionate credit transactions (18 U.S.C. §§ 891-894);  mail and wire fraud (18 U.S.C. §§ 1341, 1343); obstruction of criminal investigations (18 U.S.C. § 1510);  interference with commerce, robbery, or extortion (18 U.S.C. § 1951); engaging in monetary transactions in property derived from specified unlawful activity (18 U.S.C. § 1957); interstate transportation of stolen property (18 U.S.C. §§ 2314 and 2315); and trafficking in goods or services bearing counterfeit marks (18 U.S.C. § 2320).  Defendants violated laws of the United States in conveying Dr. Arunachalam's and Pi-Net's confidential information via John Carpenter and Charlie Kulas to Oracle. Defendants have assisted JPMorgan, IBM, SAP in anti-trust violations.  Defendants have violated the various contracts with Dr. Arunachalam through willful and highly material fraud and hence are liable under RICO and other.  The indelible evidence of Eclipse code version 2.0.1 incorporating the inventions of Dr. Arunachalam and Leader Technologies is a matter of public record and cannot be disputed by Defendants. This Court should take judicial notice of Eclipse code version 2.0.1, a matter of public record.

**Disputed Fact No. 9**: Defendants' statement on pp. 22-23, D.I. 160 that "CAUSE V FOR PERSONAL INJURY…falsely…Health Claims…directed to "Financial Value and Loss to Plaintiff of her health and property by emotional and physical duress." …Alleged legal malpractice cannot create a cause of action for abuse or other physical harm … The claims … directed … at Pazuniak, … recognized that …Count VII …survived Rule 12(b)(6). Arunachalam…changed the pleadings, and the current pleadings fail to state a cause of action…Vaupnek… §§1983 and 1988 Claims Must Be Dismissed Finally… "excludes from its reach merely private conduct" …conclusory allegation that Pazuniak is acting under the color of law.  Pazuniak did not act under color of state law" is false and non-factual.

Cause V must not be dismissed. Defendants admit "it is recognized that the Court previously stated that Count VII in Arunachalam's First Amended Complaint survived Rule 12(b)(6).  (D.I. 124, 125)." Defendants distort what Dr. Arunachalam has pled regarding intentional infliction of emotional distress.   Dr. Arunachalam has many witnesses and hospital emergency visits and hospital admissions due to  Pazuniak stressing her,  bullying her and overworking her since 2011. Defendants falsely state that "Arunachalam… falsely asserts personal abuse." The many Doctor's letters have been provided to this Court in this case already that are part of the record in this case and in related cases, CAFC Case 14-1495. Arunachalam has not changed the pleadings from what she stated in Count VII in her First Amended Complaint. The Court and Defendants rushed Dr. Arunachalam who had to file over 50 briefs when she had just returned from over 6 weeks of in-patient infusion treatment, to file the Second Amended complaint when she was near a stroke. See D.I. 155.  Judge Andrews did not give her the requested extension of time by 8/15/16, hence Dr. Arunachalam had to file work in progress on 8/15/16. Dr Arunachalam in her medical condition near a stroke forgot, not having sufficient time, to add the following sentence in the beginning of this section. "Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.  Substance prevails over form." She requests the Court to grant her leave to add this sentence  at the beginning of this section and also in the beginning of the Civil Rights violation section. Dr. Arunachalam would be happy to

file another Amended Complaint, with the Court's permission, including a few identified DOES 1-3, and consonant with Rule 15, which provides that "leave shall be freely given when justice so requires," Plaintiff requests that this Court permit this amendment in the interest of accuracy of the pleadings to reflect a more complete picture of the events that took place pertinent to this cause of action. Plaintiff has written to Defendants, asking for consent. This amendment seeks to correct a deficiency in the original pleading with regard to Defendants' violations of the laws of the United States that provide context to this cause of action. The requested amendment merely corrects a pleading defect and does not affect the substantive rights of the parties. Dr. Arunachalam would be happy to provide a corrected copy of the Complaint reflecting the corrections to this section and the §1983 **section** of the relevant events that provide context to this specific cause of action in a formal motion for leave to amend. Defendants' misconduct where Defendants violated §1983 and acted under the color of state law directly affected the Plaintiff and witnesses. Plaintiff has many witnesses to Defendants' misconduct with regard to §1983 violations, which evidence that Plaintiff's §1983 claims are valid and can hardly be a conclusory allegation**.** Defendants wrote threatening letters or communication, endeavored to influence, terrorize, intimidate, impeded Dr. Arunachalam, her lawyers, officers of the Court of the United States, in the discharge of their duties. Plaintiff can produce these terrorizing emails by Defendants to her attorneys.

   **Disputed Fact No. 10**: Defendants' statement on p. 23, D.I. 160 that "…No Fraud When Statement Is To A Third-Party…Neither states a fraud claim as a matter of law…allegations do not meet Delaware law's requirements… not directed at the plaintiff…This is the law generally" is false.

   Defendants provided their own emails as Exhibits. These evidence Defendants meets all five conditions with regard to both Frauds alleged. Those were only two examples of the many fraudulent acts committed by Defendants, which fraud spans across the entire period of Defendants' representation and even after termination. Defendants violated the statutes cited by

Defendants on pp. 23-24, D.I. 160. Defendants willfully omitted to Dr. Arunachalam that Fulton Bank was sued on the '339 patent and omitted that he did not state to the Court that the '339 patent was not collaterally estopped as it had never been adjudicated previously. He made statements to Plaintiff on the *Fulton Bank* case with willful intent to induce the Plaintiff to act or to refrain from acting and he damaged the Plaintiff as a result of such reliance. This is true of his willful misrepresentations and acts of fraud Pazuniak intentionally committed from 2011 to 2016.

**Disputed Fact No. 11: Defendants' statement on p. 26-29 that "The documentary record establishes …counsel did everything possible to transition the case to new counsel…CAUSE VII FOR BREACH OF CONTRACT MUST BE DISMISSED 1. Arunachalam Cannot Sue Both In Tort and Contract Arunachalam's 7th Cause, …Arunachalam does not cite any provision of the parties' agreement…Nothing in the Agreement required counsel to follow Arunachalam's…instructions on claim construction …Grant & Eisenhofer and Pazuniak Law Office …appeared for WebXchange Inc., and never represented Arunachalam individually" is false.**

Defendants' tortious interference with contract—willfully prevented Dr. Arunachalam from hiring any counsel—trade secret theft by Pazuniak, Carpenter and Kulas who hired Carpenter to be front end for him so he could continue working for Oracle for $1M. They are DOES 1-3 in this case and 16-281. Kulas, Carpenter and Victoria were hired to do the Appellate work in Case 14-1495, not for the *Fulton Bank* case. Defendants admit they shared attorney-client privileged and confidential information related to Dr. Arunachalam's and Pi-Net's District Court cases. Dr. Arunachalam put George Pazuniak on notice at the time he leaked confidential information from Pi-Net and Dr. Arunachalam to Carpenter. Defendants tortuously interfered with Dr. Arunachalam's business every time she hired new counsel, as when she hired Charlie Kulas, who wrote Dr. Arunachalam's patents and scared him away by threatening Carpenter with the word "libel." Defendants scared Weidner, Pi-Net's counsel with threats via emails. Defendants citing self-serving emails with John Carpenter evidences the racketeering Pazuniak committed along with Carpenter. Oracle is a member of The IBM Eclipse Foundation. Pazuniak admits he stated:

"…think twice about re-filing Lakshmi's libel."  Pazuniak sued Plaintiff in state court for libel, for

what she has immunity for what she filed in Court. Pazuniak manipulated  Carpenter to leave.

Carpenter falsely stated Pi-Net did not pay its bill,  billed an exorbitant $11K for making entry of

appearance, yet returned the retainer money Pi-Net paid. Why would he return it if Pi-Net did not

pay its bill, as he fraudulently stated to the CAFC?

  **Disputed Fact No. 12: Defendants' statement on pp. 27-28 that "… in the Fulton case…counsel…determined …collateral estoppel was determinative….Robinson's construction of "real-time" –impossible to argue infringement…indefinite … attorney fees …Counsel…did not challenge collateral estoppel…documentary record shows … Pazuniak to Pi-Net/Arunachalam and appellate counsel stating that they need to appeal … legal argument in a public record, without more, cannot be fraud as a matter of law"  is false.**

  Exhibits A,  B and C, Dr. Arunachalam's Opening Brief in the *Fremont Bank* case CAFC

15-1831 evidence Defendants statements are false and show  the entire pattern of Defendants'

misconduct and that Defendant committed intentional fraud and obstruction of justice. The claim

terms are not indefinite, as per the record, specification and prosecution history. The claim term

"real-time" is defined clearly in the specification in Columns 2, 5, 6 and 7 as "non-deferred."

Defendants misled the Court that the patents-in-suit are collaterally estopped, as he knew he lost

the Markman Hearing due to his own misconduct and wanted to kill Dr. Arunachalam's patents in

order to get away from malpractice by committing another act of misconduct. Pazuniak committed

perjury in his Declaration. He admits he leaked confidential information from Plaintiff to

Carpenter, *supra.* Defendants had no business interfering with contract with Dr. Arunachalam's

new lawyers.

WHEREFORE, Defendants' Motions must not be granted. A Certificate of Service is attached.

  Dated: October 3, 2016     Respectfully submitted,

*Lakshmi Arunachalam*

222 Stanford Ave, Menlo Park, CA 94025
Tel: 650 690 0995      *Pro Se* Plaintiff
laks22002@yahoo.com     Dr. Lakshmi Arunachalam

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **DR. LAKSHMI ARUNACHALAM,** | **Case No.: 1:15-cv-259-RGA** |
| **Plaintiff,** | |
| **v.** | |
| **GEORGE PAZUNIAK, PAZUNIAK LAW OFFICE LLC, O'KELLY, ERNST & BIELLI, LLC, and DOES 1 THROUGH 100,** | **DEMAND FOR JURY TRIAL YES** |
| **Defendants** | |

## CERTIFICATE OF SERVICE

I, Dr. Lakshmi Arunachalam, hereby certify that on October 3, 2016, I filed an original and two copies of the attached "PLAINTIFF'S ANSWERING BRIEF OPPOSING DEFENDANTS' MOTION TO DISMISS  AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (D.I, 159, 160, 161)," Dr. Arunachalam's Declaration  and Exhibits with the Clerk of the Delaware District Court   for filing and docketing in this case on this 3rd day of October, 2016,  by sending it to Parcels, Inc. in Wilmington, DE  to deliver it on the morning of October 3, 2016 for filing and docketing in this case to: the Clerk of the Court, U.S. District Court  for the District of Delaware, 844 N. King Street, Unit 18, Wilmington, DE 19801.

I also certify that I sent the same to all counsel of record for all Defendants via email and/or First Class U.S. Mail on October 3, 2016.

*Lakshmi Arunachalam*

DATED: October 3, 2016

Dr. Lakshmi Arunachalam
222 Stanford Avenue
Menlo Park, CA 94025

21

650 690 0995
laks22002@yahoo.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **DR. LAKSHMI ARUNACHALAM,** | ) **Case No.: 1:15-cv-259-RGA** |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **GEORGE PAZUNIAK, PAZUNIAK LAW** | ) |
| **OFFICE LLC, O'KELLY, ERNST &** | ) |
| **BIELLI, LLC, and DOES 1 THROUGH** | ) |
| **100,** | ) **DEMAND FOR JURY TRIAL** |
| | ) **YES** |
| **Defendants** | ) |
| | ) |

**DECLARATION OF DR. LAKSHMI ARUNACHALAM IN SUPPORT OF
PLAINTIFF'S ANSWERING BRIEF OPPOSING DEFENDANTS'
MOTION TO DISMISS AND DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT (D.I, 159, 160, 161)**

I, LAKSHMI ARUNACHALAM, declare:

I am the inventor and assignee of the U.S. Patent No. 7,340,506/US 7,340,506 C1 that has re-emerged successfully from an *inter-partes* re-examination by the United States Patent and Trademark Office initiated by Microsoft, and also of the prior patents-in-suit in the JPMorgan case 1:12-cv-282 (D.Del.) and in the Fulton Bank case 1:14-cv-490-RGA (D.Del.) , all of which derive their priority date from my provisional patent application with S/N 60/006,634 filed November 13, 1995. I reside at 222 Stanford Avenue, Menlo Park, CA 94025. I am *pro se* Plaintiff in the above-captioned action. I make this declaration based on personal knowledge and, if called upon to do so, could testify competently thereto.

1. Attached as **Exhibit A** is a true and correct copy of the Corrected Plaintiff's Opening Brief in CAFC 14-1495.

22

2.   Attached as **Exhibit B** is a true and correct copy of Dr. Arunachalam's Letter to Judge

Robinson.

3.   Attached as **Exhibit C** is a true and correct copy of Plaintiff's Opening Brief in CAFC

15-1831.

4.   The foregoing motion is true and correct, to the best of my knowledge and information.

     I declare under the penalty of perjury under the laws of the United States and the State of California and Delaware that the foregoing is true and correct. Executed this 3rd day of October, 2016 in Menlo Park, California.

222 Stanford Avenue

Menlo Park, CA 94025

650 690 0995, laks22002@yahoo.com

Dr. Lakshmi Arunachalam