IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| DR. LAKSHMI ARUNACHALAM, | : | |
| --- | --- | --- |
| Plaintiff, | : | |
| v. | : | Civil Action No. 15-259-RGA |
| GEORGE PAZUNIAK, et al., | : | |
| Defendants. | : | |

Dr. Lakshmi Arunachalam, Menlo Park, California. *Pro Se* Plaintiff.

George Pazuniak, Esquire, Pazuniak Law Office LLC, Wilmington, Delaware. Counsel for Defendants George Pazuniak and Pazuniak Law Office LLC.

Sean T. O'Kelly, Esquire, and Ryan M. Ernst, Esquire, O'Kelly & Ernst, LLC, Wilmington, Delaware. Counsel for Defendant O'Kelly, Ernst & Bielli, LLC.

## **MEMORANDUM OPINION**

September 11, 2017
Wilmington, Delaware

*Mulhand G. Andrury*
**ANDREWS, U.S. District Judge:**

Plaintiff Dr. Lakshmi Arunachalam, who appears *pro se* and has paid the filing
fee, filed this action on November 14, 2014, in the United States District Court for the
Northern District of California. (D.I. 1). The matter was transferred to this Court on
March 25, 2015. (D.I. 99, 100). On February 24, 2016, the Court granted in part and
denied in part Defendants' motions to dismiss the First Amended Complaint and
Plaintiff was given leave to amend.[1] (D.I. 125). The Second Amended Complaint
asserts jurisdiction pursuant to: (1) 28 U.S.C. § 1331 by reason of a federal question;
(2) 28 U.S.C. § 1337(a) by reason of a federal statute regulating commerce; and (3) 28
U.S.C. § 1338 by reason of patents, copyrights, and trademarks.[2] (D.I. 158 at ¶ 36).
Defendants George Pazuniak, Pazuniak Law Office LLC, and O'Kelly, Ernst & Bielli,
LLC move for dismissal pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and for partial
summary judgment. (D.I. 159). Plaintiff opposes. Briefing on the matter has been
completed. (D.I. 160, 161, 172, 173, 174).

## BACKGROUND

Plaintiff filed the Second Amended Complaint on August 15, 2016, after having
been given several extensions of time. (*See* D.I. 129, 137, 143, 151, 157). The First
Amended Complaint contained eleven counts, as follows: Counts One, Two, Three,
and Five were raised against all Defendants and alleged legal malpractice (*id.* at ¶¶18-
30), negligence (*id.* at ¶¶ 31-34), breach of fiduciary duty (*id.* at ¶¶ 35-44), and failure to

---

[1]The First Amended Complaint was dismissed except for Count Seven, which
the Court construed as a claim of intentional infliction of emotional distress. (*See* D.I.
124 at p.14).

[2]Although the parties are diverse, Plaintiff does not invoke jurisdiction under 28
U.S.C. § 1332.

provide competent representation (*id.* at ¶¶ 56-61). Count Four was raised solely against Pazuniak and alleged that he did not follow instructions. (*Id.* at ¶¶ 45-55). Count Eleven was raised against Pazuniak and the George Pazuniak Law Firm LLC[3] and sought a declaratory judgment "regarding libel." (*Id.* at ¶¶ 81-85). Counts Six, Seven, Eight, Nine, and Ten appeared to be directed only against Pazuniak. Count Six alleged intimidation, harassment, blackmail, fraud, drinking, false billing, bullying, duress, collusion with defense counsel and new appellate counsel, conspiracy to commit fraud and intentional breach of fiduciary duty, unauthorized violation of attorney-client privilege, breach of ethical obligations, threats, and racial slurs. (*Id.* at ¶¶ 62-74). Count Seven alleged sexual harassment, racial slurs, and personal injury (*id.* at ¶¶ 75-77), Count Eight alleged financial damage (*id.* at ¶¶ 78), Count Nine alleged elder abuse (*id.* at ¶ 79), and Count Ten alleged breach of contract (*id.* at ¶ 80).

The Second Amended Complaint contains seven counts. (D.I. 158) For the first time, Plaintiff raises civil RICO claims and claims under 42 U.S.C. § 1983. Counts One and Two, raised against all Defendants, contain the newly added civil RICO claims, pursuant to 18 U.S.C. §§ 1962(a), (b), (c), and (d), and § 1964(c). (*Id.* at ¶¶ 41-142). Count Three is raised against all Defendants and alleges legal malpractice/ngligence, that Pazuniak did not follow client instructions, and Defendants failed to provide competent representation.[4] (*Id.* at ¶¶ 143-187). Count Four is raised against Pazuniak

_____

[3]There is likely no entiity known as George Pazuniak Law Firm LLC. The Second Amended Complaint renames the defendant as Pazuniak Law Office LLC.

[4]This claim was raised in the Counts One, Two, Four, Five, and Six of the First Amended Complaint. Paragraphs 145 through 151, 154, 155, and 157 through 185 of the Second Amended Complaint are, for the most part, identical to paragraphs 21

2

and alleges that he failed to return or reimburse monies owed to Plaintiff from settlements and monies paid by Plaintiff.[5] (*Id.* at ¶¶ 189-201). Count Five appears to be raised solely against Pazuniak and raises personal injury, sexual harassment, racial slur, and civil rights violations under 42 U.S.C. §§ 1983 and 1988.[6] (*Id.* at ¶¶ 202-11). Count Six appears to be raised solely against Pazuniak and alleges intentional fraud. (*Id.* at ¶¶ 212-14). Count Seven alleges breach of contract and appears to be raised against all Defendants.[7] (*Id.* at ¶¶ 215-16).

Plaintiff, a California resident, is the "the sole inventor/owner of early Internet patents" and "the inventor of Web applications displayed on a Web browser in ubiquitous use worldwide by consumers and small, mid-sized and giant corporations and the U.S. Government." (*Id.* at ¶ 37). George Pazuniak is an "attorney licensed to practice law in Delaware with an office in Wilmington, DE" and George Pazuniak Law

---

through 26, 29 through 34, 45 through 61, 64 through 69, and 71 through 73 of the First Amended Complaint. (*Compare* D.I. 13 to D.I. 158).

[5]This claim was raised in the Count Three of the First Amended Complaint. Paragraphs 189 through 198 of the Second Amended Complaint are, for the most part, identical to paragraphs 35 through 44 of the First Amended Complaint. (*Compare* D.I. 13 to D.I. 158). Paragraphs 199 and 200 of the Second Amended Complaint are identical to a motion filed by Plaintiff in *Pazuniak Law Office LLC v. Pi-Net International, Inc.*, C.A. No. N142C-12-126-EMD (Del. Super.). (*See* D.I. 161-2 at pp.2-11).

[6]This claim was raised in the Counts Six, Seven, Eight, and Nine of the First Amended Complaint. Paragraphs 202 through 209 of the Second Amended Complaint are, for the most part, identical to paragraphs 62, 63, 64 and 75 through 79 the First Amended Complaint. (*Compare* D.I. 13 to D.I. 158).

[7]This claim was raised in the Count Ten of the First Amended Complaint. Paragraph 216 of the Second Amended Complaint contains many of the same allegations as in paragraphs 80 and 84 of the First Amended Complaint. (*Compare* D.I. 13 to D.I. 158).

Office, LLC, was "a law firm duly organized and existing under the laws of the State of Delaware with its principal place of business in the City of Wilmington, Delaware." (*Id.* at ¶¶ 28-29). O'Kelly, Ernst & Bielli, LLC is "a law firm duly organized and existing under the laws of the State of Delaware with its principal place of business in the City of Wilmington, Delaware and also in Philadelphia, PA." (*Id.* at ¶ 30). Plaintiff hired Pazuniak and Pazuniak Law Office "for her patent cases against many infringers in 2011, 2012, and 2013 based upon his representation that he is a patent litigator and would provide competent counsel to competently conduct her patent cases." (*Id.* at ¶ 38).[8] Plaintiff alleges that Pazuniak "joined the O'Kelly Law Firm during the course of her patent litigation, and Pazuniak and O'Kelly Law firm became the Plaintiff attorneys in her patent cases." (*Id.*). With the assistance of Defendants, Plaintiff sued a number of corporations for patent infringement. The claims in this action all arise out of Defendants' representation in those patent infringement proceedings.

Defendants move for dismissal pursuant to Rules 12(b)(1) and 12(b)(6) for lack of standing and for failure to state claims upon which relief may be granted. Fed. R. Civ. P. 12. In addition to seeking dismissal, Defendants also move for summary judgment on Plaintiff's two frauds claims found at Paragraph 214 of the Second Amended Complaint on the grounds that there is no genuine issue as to any material fact.

---

[8]It appears the date of hire was January 25, 2012, and that the clients were WebXchange, Inc., Pi-Net International, Inc., and Plaintiff. (D.I. 31-4 at p.37 (retainer agreement)).

4

## STANDARDS OF LAW

Defendants seek dismissal pursuant to Rules 12(b)(1) and 12(b)(6) of the

Federal Rules of Civil Procedure and have submitted matters of public record as well as

documents referred to in the Second Amended Complaint in support of their motion.

> In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally
> consider only the allegations in the complaint, exhibits attached to the
> complaint, matters of public record, and documents that form the basis of
> a claim. A document forms the basis of a claim if the document is
> 'integral to or explicitly relied upon in the complaint.' The purpose of this
> rule is to avoid the situation where a plaintiff with a legally deficient claim
> that is based on a particular document can avoid dismissal of that claim
> by failing to attach the relied upon document. Further, considering such a
> document is not unfair to a plaintiff because, by relying on the document,
> the plaintiff is on notice that the document will be considered.

Lum v. Bank of Am., 361 F.3d 217, 221-22 n.3 (3d Cir. 2004) (internal citations

omitted). The documents submitted to the Court that are matters of public record may

properly be considered in ruling on Defendants' motions to dismiss. George Pazuniak

included a declaration in briefing the issues, and it may be considered when ruling on

Defendants' motion for partial summary judgment. (See D.I. 161).

Because Plaintiff proceeds pro se, her pleading is liberally construed and her

Second Amended Complaint, "however inartfully pleaded, must be held to less stringent

standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89,

94 (2007).

Defendants move for dismissal on the grounds that: (1) Plaintiff entirely revised

her complaint, but ignored the Court's prior rulings, and "added new problems" by

pleading RICO and § 1983 violations; (2) that all seven claims as pled by Plaintiff

5

should be dismissed as a matter of law; (3) no claims are stated against O'Kelly, Ernst
& Bielli, LLC; and (4) the Court must abstain from Count Four.

## Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits the dismissal of an
action for "lack of subject matter jurisdiction." A Rule 12(b)(1) motion may be treated as
either a facial or factual challenge to the court's subject matter jurisdiction. *See*
*Constitution Party of Pa. v. Aichele,* 757 F.3d 347, 357-58 (3d Cir. 2014). In reviewing
a facial attack, "the court must only consider the allegations of the complaint and
documents referenced therein and attached thereto, in the light most favorable to the
plaintiff," and the standards relevant to Rule 12(b)(6) apply. *Id.* at 358.

In reviewing a factual challenge to the Court's subject matter jurisdiction, the
Court is not confined to the allegations of the complaint, and the presumption of
truthfulness does not attach to the allegations in the complaint. *Mortensen v. First Fed.*
*Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Instead, the Court may consider
evidence outside the pleadings, including affidavits, depositions and testimony, to
resolve any factual issues bearing on jurisdiction. *Gotha v. United States*, 115 F.3d
176, 179 (3d Cir. 1997). Once the Court's subject matter jurisdiction over a complaint is
challenged, the plaintiff bears the burden of proving that jurisdiction exists. *Mortensen*,
549 F.2d at 891.

## Rule 12(b)(6)

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). I am "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 135 S. Ct. 346, 346 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 347. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.* Deciding whether

7

a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## DISCUSSION

The Second Amended Complaint does not comply with the Federal Rules of Civil Procedure, which require the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Second Amended Complaint, at 149 pages in length, is not short and it is not plain. Numerous exhibits totalling about 500 pages are attached to the Second Amended Complaint, mostly to support the RICO claims. They are referred to as providing a "preponderance of evidence" of documentary material of Defendants' alleged misconduct, generally without citation to a specific exhibit or page number. (*See* D.I. 158 at ¶¶ 57, 61, 63, 67, 72, 74, 97, 104, 120, 130, 138, 139).

### RICO, Counts One and Two

In Count One, Plaintiff attempts to raise civil racketeering claims against all Defendants and alleges that they violated 18 U.S.C. §§ 1962(a), (b), (c), and (d). Count Two seeks treble damages under 18 U.S.C. § 1964(c). Defendants move to dismiss for failure to state claims upon which relief may be granted.

"[T]he Racketeer Influenced Corrupt Organization Act, 18 U.S.C. §§ 1961-68, authorizes civil suits by '[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962].'" *Hughes v. Consol-Pennsylvania Coal Co.*, 945 F.2d 594, 609 (3d Cir. 1991) (quoting 18 U.S.C. § 1964(c)).

"Section 1962(a) prohibits any person who has received any income derived . . . from a pattern of racketeering activity from using that money to acquire,

8

establish, or operate any enterprise that affects interstate commerce. Section 1962(b) prohibits any person from acquiring or maintaining an interest in, or controlling any such enterprise through a pattern of racketeering activity. Section 1962(c) prohibits any person employed by or associated with an enterprise affecting interstate commerce from conduct[ing] or participat[ing] . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity."

*Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1411 (3d Cir. 1991). Section 1962(d) provides for a RICO conspiracy claim, making it unlawful "for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). The Court distills what is necessary to state claims under each subsection of § 1962.

To state a claim under § 1962(a), Plaintiff must allege that she suffered an injury specifically from the use or investment of income in the named enterprise. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1188 (3d Cir. 1993). The injury resulting from the use or investment of the racketeering income must be separate from any injury resulting from the racketeering acts themselves. *Id.* To state a claim under § 1962(b), Plaintiff must allege that she suffered an injury from the defendant's acquisition or control of an interest in a RICO enterprise, in addition to injury from the predicate acts. *Id.* at 1190. The plaintiff must also establish that the interest or control of the RICO enterprise by the person is a result of racketeering, and it must be established firmly that there is a nexus between the interest and the racketeering activities. *Id.*

To state a claim under § 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Warden v. McLelland*, 288 F.3d 105, 114 (3d Cir. 2002). A "pattern" requires "at least two acts of racketeering activity" which occur within a ten year period. 18 U.S.C. § 1961(5). To prove a pattern

9

of racketeering activity, a plaintiff must show that "the racketeering predicates are

related, and that they amount to or pose a threat of continued criminal activity." *H.J.,*

*Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989). "Racketeering activity" is

defined in § 1961(1).

Where a plaintiff relies on mail or wire fraud as a basis for a RICO violation, the

allegations of fraud must comply with Fed. R. Civ. P. 9(b), which requires that

allegations of fraud be pled with specificity.

> Rule 9(b) requires plaintiffs to plead with particularity the "circumstances"
> of the alleged fraud in order to place the defendants on notice of the
> precise misconduct with which they are charged, and to safeguard
> defendants against spurious charges of immoral and fraudulent behavior.
> It is certainly true that allegations of "date, place or time" fulfill these
> functions, but nothing in the rule requires them. Plaintiffs are free to use
> alternative means of injecting precision and some measure of
> substantiation into their allegations of fraud.

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).

To state a conspiracy claim under § 1962(d), a plaintiff must allege an

agreement to commit the predicate acts, and knowledge that those acts were part of a

pattern of racketeering activity conducted in such a way as to violate § 1962(a), (b), or

(c). *See Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989). While "a defendant need

not himself commit or agree to undertake all acts necessary to make out a § 1962(c)

violation," he must "agree to facilitate the commission of activities prohibited under

RICO." *Mega Concrete v. Smith*, 2013 WL 3716515, at \*16 (E.D. Pa. July 15, 2013).

Plaintiff alleges, "Defendants conspired to engage in racketeering activity across

State lines related to and are members, paying annual fees to the Delaware Bar

10

Association and the Office of Disciplinary Counsel ('ODC')",[9] an arm of the Supreme Court of Delaware, which purportedly assists the Court in regulating the practice of law, and The IBM Eclipse Foundation,[10] in one of four ways specified in civil RICO § 1962." (D.I. 158 at ¶ 45). She alleges, "Defendants committed these acts along with" the U.S. District Court for the District of Delaware, the U.S. Court of Appeals for the Federal Circuit, the United States Patent and Trademark Office, the Patent Trials and Appeals Board, the Delaware Superior Court, SAP America, Inc., JPMorgan Chase, and IBM. (*Id.* at ¶ 45).

Defendants point out that Plaintiff supports the RICO claims with exhibits she also relied upon in raising RICO claims in another case she has filed in this Court, *Arunachalam v. Internal Business Machines Corp.*, Civ. Act. No. 16-281-RGA ("IBM litigation"), at D.I. 6, Exs. A-K. They move for dismissal on the grounds that Plaintiff pleads substantially the same RICO claim in the instant case as in the IBM litigation. The RICO claims in the IBM litigation were dismissed upon Defendants' motions and, although the Court believed amendment would be futile, it allowed Plaintiff an opportunity to amend. (*See* Civ. Act. No. 16-281-RGA at D.I. 89, 90). Plaintiff contends that the Second Amended Complaint shows Defendants' misconduct and pattern of racketeering in and through the Delaware Bar Association and the Office of

---

[9]The Office of Disciplinary Counsel is an arm of the Supreme Court of Delaware, which assists the Court in regulating the practice of law and is charged with evaluating, investigating, and, if warranted, prosecuting lawyer misconduct. *See* http://courts.delaware.gov/odc/ (last visited Aug. 15, 2017).

[10]The Eclipse Foundation, headquartered in Ottawa, Canada, is incorporated in the State of Delaware as a 501(c)(6) not-for-profit. *See* http://www.eclipse.org/org/foundation/reports/annual_report.php (last visited Aug. 14, 2017).

11

Disciplinary Counsel and that Defendants' misconduct is separate from, and in addition to, engaging in and assisting IBM's, SAP America, Inc.'s, and JPMorgan Chase's racketeering in and through the IBM Eclipse Foundation. (See D.I. 172 at p.2).

It is evident that Counts One and Two are Plaintiff's attempts to characterize her displeasure and dissatisfaction with Court rulings, administrative bodies, and attorneys who have represented her as RICO claims. The rambling narrative of the Second Amended Complaint makes it difficult, if not impossible, to discern which allegations Plaintiff contends support each of the four RICO claims she attempts to raise. In addition, many allegations are clearly conclusory while others merely parrot the RICO statute.

Plaintiff relies upon her voluminous exhibits (as mentioned, some 500 pages) to show that "Defendants engaged in the four types of relationships between a pattern of racketeering activity and an enterprise, prohibited by the civil RICO statutes. (D.I. 158 at ¶ 63). As I stated in the March 21, 2017 IBM litigation order, "I do not think Plaintiff can make out racketeering claims simply by appending about 60 pages of exhibits containing mostly irrelevant information and providing a citation to where other materials can be found and purporting to incorporate them all by reference." (Civ. Act. No. 16-281-RGA at D.I. 89). The same is true for the instant case.

It seems that Plaintiff uses the fact that Defendants (who are attorneys or law firms) pay "an annual membership fee to the Delaware Bar Association and the Office of Disciplinary Counsel," (D.I. 158 at ¶ 51) as a way to make her claims fit the elements required for the RICO claims. For example, in attempting to raise a § 1962(a) claim, she alleges that "a preponderance of evidence points to a nexus between the income or

12

proceeds from the underlying racketeering activity and civil RICO enterprise(s) identified," while next alleging that Defendants paid their annual bar dues and this "coincided" with a comparable amount earned in the civil RICO enterprises. (*Id.* at ¶ 64). Section 1962(a) is "primarily directed at halting the investment of racketeering proceeds into legitimate businesses, including the practice of money laundering." *Lightning Lube*, 4 F.3d at 1188. Even were the Court to interpret the payment of bar fees as an investment, which is not plausible, the Second Amended Complaint does not establish an injury resulting from the investment of racketeering income distinct from an injury caused by the predicate acts themselves, as is required to establish a violation of § 1962(a).[11] *See id.*

In attempting to raise a claim under § 1962(b), Plaintiff alleges in a conclusory manner, "Defendants received income, directly or indirectly, from a pattern of racketeering activity via the Delaware Bar Association and the ODC" to invest in the creation of the IBM Eclipse Foundation, and that they "paid fees and acquired an interest in the Delaware Bar Association and the [ODC] as officers of the court" to control the affairs of the IBM Eclipse Foundation. (*Id.* at ¶ 65). Plaintiff then alleges that "such positions constitute an 'interest' in an enterprise" under § 1962(b). (*Id.*). The allegations that Defendants acquired an interest in the Delaware Bar Association and the Office of Disciplinary Counsel by paying fees is nothing short of nonsensical as are the allegations that Defendants received income in some fashion from the Delaware Bar Association and the Office of Disciplinary Counsel to acquire an interest in The IBM

---

[11]As will be discussed, the allegations of predicate acts do not meet the strict pleading requirements of Fed. R. Civ. P. 9.

Eclipse Foundation. Nor do the allegations establish a nexus between the interest and the alleged racketeering activities.

In attempting to state a claim under § 1962(c), the Second Amended Complaint contains a laundry list of predicate acts allegedly committed by Defendants including mail and wire fraud. (D.I. 158 at ¶ 57). A list of predicate acts allegedly committed by Defendants, with nothing more, is wholly inadequate. Nor are the fraud claims alleged with particularity as is required under Fed. R. Civ. P. 9. Instead, the fraud claims allege generally, "Defendants violated many laws through willful and highly material fraud and hence are liable under RICO." (Id. at ¶¶ 57, 58). Plaintiff alleges, "Defendants made some representations by mail, telephone, wire and email. . . . Proof that Defendants committed common law fraud (plus the additional element of using the mails or wires) to establish these predicate acts abounds, which discovery will reveal and confirm, too numerous to detail here." (Id. at ¶ 76). The allegations clearly do not meet the Rule 9 pleading standards and do not suffice to state a claim under § 1962(c).

Finally, because all the substantive RICO claims are deficient, the claim for racketeering conspiracy pursuant to § 1962(d) also fails. See Kolar v. Preferred Real Estate Inv., Inc., 361 F. App'x 354, 366 (3d Cir. 2010). The conspiracy claim fails to state a claim upon which relief may be granted as Plaintiff alleges in a purely conclusory manner that Defendants conspired and agreed to engage in conduct that violates §§ 1962(a), (b), and (c), and agreed to commit at least two predicate acts which form the pattern of racketeering activity." (D.I. 158 at ¶ 71).

Plaintiff has not stated cognizable racketeering claims. There is nothing in the Second Amended Complaint that gives any hint that Plaintiff could ever successfully

14

allege any racketeering claims against the Defendants. Therefore, the Court will grant Defendants' motion to dismiss Counts One and Two and finds amendment futile.[12]

### Legal Malpractice, Count Three

The thrust of Count Three is that Defendants' legal malpractice caused Plaintiff harm. Count Three consists of paragraphs 143 through 188. The legal malpractice claims contain identical allegations to the previously dismissed legal malpractice claims except for newly added allegations in paragraphs 143, 144, 152, 153, 156, and 186 through 188. Some of the new material appears to be added in an attempt to cure the pleading defects of the First Amended Complaint, including that: (1) Plaintiff sued various companies for infringement of her U.S. Patent Numbers 5,987,500; 8,108,492; 8,037,158; 8,346,894; 8,407,318; and 8,244,833, that she is the real party-in-interest, and that the legal malpractice claims of Pi-Net were assigned to her at the time Pi-Net went out of business; (2) George Pazuniak and Pazuniak Law Office entered into two contracts with Plaintiff and her companies - the first in 2011 and the second in 2012; (3) Pazuniak joined the O'Kelly law firm, and Defendants represented Plaintiff in her depositions in a case against JPMorgan Chase; (4) Defendants filed some lawsuits in Plaintiff's name and some in Pi-Net's name; (5) Defendants refiled some of the action in Pi-Net's name by transferring the patents from Plaintiff to Pi-Net as the assignee; and (6) Plaintiff transferred all the patents to her name from Pi-Net when Defendants thwarted her from hiring any counsel. (D.I. 158 at ¶ 144).

---

[12]Plaintiff was given leave to amend her RICO claims in the IBM litigation. Defendants are not parties in that action. Her motion to do so is pending. (*See* Civ. Act. No. 16-281-RGA, at D.I. 93.)

Defendants move to dismiss the malpractice claims on the grounds that Pi-Net has not and cannot assign its legal malpractice claims to Plaintiff, Plaintiff has not plausibly pled her own claims, and at least some of the claims are barred by collateral estoppel. Defendants also move to dismiss all claims against O'Kelly, Ernst & Bielli, LLC on the grounds that there are no allegations that it was involved in any of the complained-of actions other than that Pazuniak joined the O'Kelly Law Firm during the course of Plaintiff's litigation.

Under Delaware law, a valid action for legal malpractice must pass the following three-prong test: (1) employment of the attorney; (2) neglect of a professional duty by the attorney; and (3) loss resulting from the attorney's neglect. *See Oakes v. Clark*, 2012 WL 5392139, at *3 (Del. Super. Ct.), *aff'd*, 69 A.3d 371 (Del. 2013). In addition, in order to sustain the loss element, a plaintiff must demonstrate that, but for the attorney's neglect, the plaintiff would have been successful. *See id.*

As I observed in dismissing the First Amended Complaint, the allegations are primarily directed towards Pazuniak. In both the First Amended Complaint and the Second Amended Complaint, the allegation against the O'Kelly law firm is based on the allegation that Pazuniak was an agent of the firm, acting within the scope of his employment. (D.I. 13, at ¶ 6; D.I. 158 at ¶ 32.) The Second Amended Complaint adds that Pazuniak joined the O'Kelly Law firm in the middle of patent litigation with JP Morgan. (*Id*. at ¶¶ 32, 144). While Plaintiff argues in her opposition that George Pazuniak signed court documents in her cases as George Pazuniak of the O'Kelly, Ernst & Bielli Firm (D.I. 172 at 2), this allegation does not appear in the Second

16

Amended Complaint. The remaining allegations refer to "Defendants" and never specifically to the O'Kelly firm.

Nor does the Second Amended Complaint state in any understandable fashion whether Plaintiff, personally, Pi-Net International, Inc., WebXchange, Inc., or some other entity is the client who employed counsel. The Second Amended Complaint does not indicate which claims Plaintiff asserts on her own behalf or which she asserts on behalf of the assignment by Pi-Net, or what claims (if any) are raised on behalf of WebXchange. Instead, it alleges that Plaintiff has sued a number of entities and lists her patents without identifying each case or the parties in those cases. The Second Amended Complaint confirms that some lawsuits were filed "in the name of Pi-Net," but the lawsuits are not identified. (D.I. 158 at ¶ 144). Further, it is not clear in which cases (other than the JP Morgan case) the O'Kelly law firm had allegedly had involvement. This lack of specificity hampers the Court's analysis, including the issue of whether it is appropriate to dismiss the O'Kelly law firm. It is not the Court's role to act as Plaintiff's researcher to identify the litigation that is the subject of the alleged legal malpractice. *See Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 405–06 (6th Cir. 1992) ("Nothing in either the rules or case law supports an argument that the trial court must conduct its own probing investigation of the record . . . . What concept of judicial economy is served when judges . . . are required to do the work of [the parties]").

The Court takes judicial notice that when Plaintiff commenced this action on November 14, 2014, in the United States District Court for the Northern District of California, Pi-Net International, Inc., a California corporation had not yet been dissolved, and it was not dissolved until July 29, 2015. *See* https://businesssearch.sos.

ca.gov/CBS/Detail (last visited Aug. 17, 2017). California corporate law provides that:

(a) A corporation which is dissolved nevertheless continues to exist for the
purpose of winding up its affairs, prosecuting and defending actions by or
against it and enabling it to collect and discharge obligations, dispose of
and convey its property and collect and divide its assets, but not for the
purpose of continuing business except so far as necessary for the winding
up thereof. (b) No action or proceeding to which a corporation is a party
abates by the dissolution of the corporation or by reason of proceedings
for winding up and dissolution thereof. (c) Any assets inadvertently or
otherwise omitted from the winding up continue in the dissolved
corporation for the benefit of the persons entitled thereto upon dissolution
of the corporation and on realization shall be distributed accordingly.

Cal. Corporations Code § 2010.

The California Code sets no time limit for a dissolved corporation to sue for

injuries arising from predissolution conduct by others. *See, e.g., Greb v. Diamond Int'l*

*Corp.*, 295 P.3d 353, 355 (Cal. 2013). Under California corporate law, "the effect of

dissolution is not so much a change in the corporation's status as a change in its

permitted scope of activity. . . . Thus, a corporation's dissolution is best understood not

as its death, but merely as its retirement from active business." *Id.* Delaware's

corresponding survival statute, 8 Del. C. § 278, provides that dissolved corporations

continue for three years from dissolution for the purpose of prosecuting and defending

civil suits and that actions commenced during that three year time-frame shall continue

beyond the three-year period until any judgments, orders or decrees are fully executed.

Accordingly, to the extent the legal malpractice claims of Pi-Net have not been

assigned to Plaintiff, because she is not an attorney, she may not represent Pi-Net as

its legal status continues under the corporate survival statutes of both California and

18

Delaware.[13] A corporation cannot appear *pro se* or by a representative of the corporation and may only participate in litigation through licensed counsel. *See Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 217 (1993).

Plaintiff alleges that she transferred all the patents from Pi-Net and that Pi-Net assigned its legal malpractice claims to her at the time of its dissolution. The Court first observes that, to the extent any claims occurred in California, it is well-established that California law prohibits the assignment of legal malpractice claims. *Hartford Cas. Ins. Co. v. J.R. Marketing, LLC*, 353 P.3d 319, 331 (Cal. 2015). To the extent any claim occurred in Delaware, and it appears that some did, so long as the assignment does not constitute champerty, and the interest in the litigation has been properly assigned, it may proceed. *See Southeastern Chester Cnty. Refuse Auth. v. BFI Waste Services of Pennsylvania, LLC.*, 2017 WL 2799160 (Del. Super. June 27, 2017); *Street Search Partners, L.P. v. Ricon Intern'l, LLC*, 2006 WL 1313859 (Del. Super. May 12, 2006).

The malpractice claim, with few exceptions, is virtually identically to that raised in the First Amended Complaint. As I previously discussed (D.I. 124 at 10), given Plaintiff's *pro se* status and liberally construing the allegations, they appear to state a cognizable malpractice claim against Pazuniak. The Second Amended Complaint, however, does not identify the cases related to the conduct complained of, or whether Plaintiff individually, Pi-Net, or some other corporate entity filed suit. Plaintiff mentions

---

[13]Under Delaware law, actions filed by or against a corporation after dissolution should be brought in the name of the corporation. *See Matthew v. Laudamiel*, 2012 WL 605589, at \*22 (Del. Ch. Feb. 21, 2012).

some litigation in her opposition to the motion to dismiss and has also filed a document she titles "Supplemental Information" that indicates Pi-Net International, Inc. no longer exists, and she is its successor in interest. (D.I. 172, 173). Plaintiff, however, may not correct the pleading deficiencies in the Second Amended Complaint with these filings (if that is her intent). *See Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

Finally, Defendants move for dismissal on the grounds that certain malpractice claims are barred by reason of collateral estoppel and have provided decisions from the Patent Trial and Appeal Board to support their position. The Second Amended Complaint does not adequately identify the litigation or its outcome that Plaintiff contends resulted from legal malpractice even with the extensive repetitive verbiage. As a result, at this time I am not in a position to determine if the claims are barred by collateral estoppel.

For these reasons, the legal malpractice claims will be dismissed for failure to state a claim, with leave to amend. Any amended complaint should specify the litigation including the parties, case number, and court, if the litigation involves a corporation or Plaintiff individually, and identify the harm to Plaintiff or the corporation. Finally, if Plaintiff seeks to raise Pi-Net's or WebXchange's claims in addition to her individual claims, she should allege specifically there is a valid assignment of Pi-Net's or WebXchange's legal malpractice claims.

## IOLTA Trust Fund Monies, Count Four

Count Four alleges that Pazuniak repeatedly refused to return client interest on lawyers trust account ("IOLTA") monies to Plaintiff despite repeated requests. Paragraphs 189 through 198 regurgitate facts identical to those raised in Count Three of the First Amended Complaint, which was dismissed by the Court as an unsuccessful attempt to raise a claim for breach of fiduciary duty. The Second Amended Complaint adds Paragraphs 199 and 200 which were taken verbatim from filings made by Plaintiff in a proceeding currently pending in the Superior Court of the State of Delaware in and for New Castle County that Pazuniak and Pazuniak's law firm has filed against Pi-Net and Plaintiff, C.A. No. N142C-12-259-EMD. (D.I. 161 at Ex. B). Plaintiff has filed a counterclaim in the Delaware action against Pazuniak and his law firm for the IOLTA funds. (See D.I. 173).

This claim is currently pending in State court. Under the *Younger* abstention doctrine, a federal district court must abstain from hearing a federal case which interferes with certain state proceedings. *See Younger v. Harris*, 401 U.S. 37 (1971). In addition, under *Younger*, federal courts are prevented from enjoining pending state proceedings absent extraordinary circumstances.[14] *Middlesex Cnty. Ethics Comm.*, 457 U.S. at 437. Abstention is appropriate only when: (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important

---

[14]The abstention doctrine as defined in *Younger v. Harris* provides that federal courts are not to interfere with pending state criminal proceedings. The *Younger* doctrine has been extended to civil cases and state administrative proceedings. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982); *Huffman v. Pursue Ltd.*, 420 U.S. 592 (1975).

21

state interests; and (3) the state proceedings provide an adequate opportunity to raise the federal claims. *Lazaridis v. Wehmer*, 591 F.3d 666, 670 (3d Cir. 2010). The doctrine applies to proceedings until all appellate remedies have been exhausted, unless the matter falls within one of the *Younger* exceptions.[15] *Huffman*, 420 U.S. at 608.

The *Younger* elements are met and none of its exceptions apply. First, there are on-going state proceedings regarding the IOLTA funds. Second, Delaware has an important interest because the claim seeks resolution of funds in a state-law-mandated trust account by an attorney licensed to practice in Delaware. Finally, Plaintiff has raised the claim in state court. Accordingly, pursuant to *Younger* and its progeny, the Court must abstain from hearing this issue. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987) (stating that *Younger* abstention is favored even after the plaintiffs failed to raise their federal claims in the ongoing state proceedings). Therefore, the Court will grant the motion to dismiss Count Four.

## Personal Injury, Sexual Harassment, Racial Slur, Civil Rights under 42 U.S.C. §§ 1983 and 1988, Count Five

Count Five alleges personal injury, sexual harassment, racial slur, and § 1983 civil rights violations. Defendants seek dismissal on the grounds that Count Five fails to state a plausible cause of action.

---

[15]Exceptions to the *Younger* doctrine exist where irreparable injury is "both great and immediate," *Younger*, 401 U.S. at 46, where the state law is "flagrantly and patently violative of express constitutional prohibitions," *id.* at 53, or where there is a showing of "bad faith, harassment, or . . . other unusual circumstances that would call for equitable relief." *Id.* at 54.

22

Under Delaware law, if properly stated, a client's claim against an attorney for sexual harassment could be the basis for a claim of intentional infliction of emotional distress. *See, e.g., Brett v. Berkowitz*, 706 A.2d 509, 511 (Del. 1998). The same could possibly be true for racial harassment. Intentional infliction of emotional distress requires that one intentionally or recklessly causes severe emotional distress to another by conduct that a reasonable person would consider extreme or outrageous. *See, e.g., Rhinehardt v. Bright*, 2006 WL 2220972, at *4 (Del. Super. July 20, 2006). Paragraphs 202 through 207 contain allegations of conduct, which, liberally construed, are that Pazuniak yelled at her, used sexually profane and crude language, and used derogatory racial references sufficient to state a claim for intentional infliction of emotional distress.

Paragraphs 208, 209, and 210 contain allegations of legal malpractice and will be dismissed given that Plaintiff has been given leave to amend her legal malpractice claim. Finally, the Court will dismiss the § 1983 claims as none of the defendants are State actors, a necessary element when raising a claim under § 1983. *See West v. Atkins*, 487 U.S. 42, 48 (1988) (when bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law). Accordingly, the Court will grant in part and deny in part the motion to dismiss Count Five. The matter will proceed on the claim for intentional infliction of emotional distress. All other claims in Count Five will be dismissed.

## Intentional Fraud, Count Six

Count Six alleges that Pazuniak committed intentional fraud on two occasions.

The first was when Pazuniak made a false representation of fact to Plaintiff's new

appellate counsel and threatened new appellate counsel with libel. The second was

when Pazuniak lied to the Court during the Fulton court hearing and in a brief in June,

July, and August 2014. (D.I. 158 at ¶ 214). Defendants seek to dismiss Count Six for

failure to state a claim upon which relief may be granted.

Under Delaware law, common law fraud requires:

(1) a false representation, usually of fact, made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance.

*Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983).

The allegations in Count Six fail to state claims. There are no allegations that

Pazuniak's representations were intended to induce Plaintiff to act or refrain from acting

or that she took action or inaction based upon his representations. Instead, as to the

first fraud claim, Plaintiff alleges that her new appellate counsel (and not Plaintiff) took

action after speaking to Pazuniak when he withdraw as her appellate counsel.

Similarly, as to the second fraud claim, Plaintiff alleges that the court (and not Plaintiff)

dismissed a case after Pazuniak allegedly lied during a hearing and in briefs. Neither of

these state cognizable fraud claims.

24

The Court will grant the motion to dismiss Count Six. Because the Court finds that amendment of Count Six would be futile, it will dismiss as moot Defendants' motion seeking summary judgment on the fraud claims.

**Breach of Contract, Count Seven**

Count Seven alleges breach of contract. Pazuniak moves for dismissal on the grounds that, under Delaware law, Plaintiff cannot sue both in tort and contract to recover for alleged legal malpractice

Count Seven contains various, sundry allegations, but mainly alleges that Plaintiff and Pazuniak (and his law firms) entered into two contracts and breach occurred when Pazuniak helped himself to monies from settlements; failed to reimburse Plaintiff for patent office fees, legal fees, and costs; failed to provide Plaintiff competent representation; failed to follow Plaintiff's oral and written instructions on key claim terms and filed incorrect claim constructions; interfered and hampered Plaintiff's ability to retain new counsel; and grossly underrepresented Plaintiff in an appeal. (D.I. 158 at ¶ 216).

In Delaware, to establish a breach of contract claim, the plaintiff must establish "first, the existence of a contract, whether express or implied; second, the breach of an obligation imposed by the contract, and third, the resultant damage to the Plaintiff." *Hudson v. Bank of America, N.A.*, 2014 WL 4693242, at *7 (Del. Super. Sept. 16, 2014). Where both legal malpractice and breach of contract are claimed: "A contract claim must relate to conduct distinct from a tort claim. In the context of legal malpractice, a tort claim and a breach of contract claim are not alternative theories of recovery for the same conduct. If they were, 'claims in tort and claims in breach of

25

contract, at least within the context of service contracts, would be indistinguishable.'"
*Health Trio, Inc., v. Margules*, 2007 WL 544156, at *11 (Del. Super. Jan. 16, 2007).

In opposing dismissal of Count Seven, Plaintiff posits that Defendants' tortious
interference with a contract[16] prevented her from hiring any counsel. She focuses on
Pazuniak's contacts with her newly hired counsel and states that Pazuniak's actions
scared him away. Plaintiff frames Count Seven in her opposition as tortious
interference with a contract even though she pled it in the Count Seven as a breach of
contract. Regardless, the gist of Count Seven is that Pazuniak and his law firms
breached two contracts in failing to provide Plaintiff adequate legal representation. As
discussed, Plaintiff may not amend her complaint in her opposition brief to Defendants'
motion to dismiss.

As Defendants correctly note, under Delaware law, Plaintiff may not assert both
tort and breach of contract claims for the same alleged legal malpractice. In reviewing
Count Seven, as pled, I find that while Plaintiff attempts to separate a breach of
contract claim from a legal malpractice claim, they are, for all intents and purposes,
indistinguishable. Therefore, the Court will grant the motion to dismiss Count Seven.
Plaintiff will be given leave to amend to the extent she seeks to raise a tortious
interference with a contract claim.

---

[16]Under Delaware law, the elements of a claim for tortious interference with a
contract are: "(1) a contract, (2) about which defendant knew, and (3) an intentional act
that is a significant factor in causing the breach of such contract, (4) without
justification, (5) which causes injury." *Bhole, Inc. v. Shore Investments, Inc.*, 67 A.3d
444, 453 (Del. 2013).

26

## CONCLUSION

For the above reasons, the Court will: (1) grant in part and deny in part
Defendants' motion to dismiss the Second Amended Complaint (D.I. 159); (3) dismiss
all claims in the Second Amended Complaint except for the Count Five claim of
intentional infliction of emotional distress; and (4) dismiss as moot the motion for partial
summary judgment (D.I. 159).

Plaintiff will be given one final opportunity to file a motion to amend to cure her
pleading deficiencies in Counts Three and Seven. All other claims and counts will be
dismissed with prejudice. Any motion to amend the complaint must comply with D.Del.
LR 15.1. Further, any proposed amended complaint is limited to sixty pages in length.[17]
Plaintiff may attach such exhibits as she wants to proposed amended complaint, but
Plaintiff should understand that its sufficiency will be judged by the sixty pages without
consideration of any attached exhibits.

An appropriate order will be entered.

---

[17] This is probably about fifty more pages than is necessary to file a complaint
alleging legal malpractice, intentional infliction of emotional distress, and tortious
interference with contract. Plaintiff's *pro se* status does not relieve her from making a
good faith attempt to comply with federal pleading standards, including that the
complaint contain "a short and plain statement of the claim showing that the pleader is
entitled to relief.".