IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DR. LAKSHMI ARUNACHALAM, :
:
    Plaintiff, :
:
v. : Civil Action No. 15-259-RGA
:
GEORGE PAZUNIAK, et al., :
:
    Defendants. :

Dr. Lakshmi Arunachalam, Menlo Park, California. *Pro Se* Plaintiff.

George Pazuniak, Esquire, Pazuniak Law Office LLC, Wilmington, Delaware. Counsel for Defendants George Pazuniak and Pazuniak Law Office LLC.

Sean T. O'Kelly, Esquire, and Ryan M. Ernst, Esquire, O'Kelly Ernst & Joyce, LLC, Wilmington, Delaware. Counsel for Defendant O'Kelly, Ernst & Bielli, LLC.

**MEMORANDUM OPINION**

September 25, 2018
Wilmington, Delaware



**ANDREWS, U.S. District Judge:**

Plaintiff Dr. Lakshmi Arunachalam, who appears *pro se* and has paid the filing fee, filed this action on November 14, 2014, in the United States District Court for the Northern District of California. (D.I. 1). The matter was transferred to this Court on March 25, 2015. (D.I. 99, 100). On February 24, 2016, the Court granted in part and denied in part Defendants' motions to dismiss the First Amended Complaint and on September 11, 2017, granted in part and denied in part Defendants' motion dismiss the Second Amended Complaint. (D.I. 125, 186). Plaintiff was given limited leave to amend.[1] (D.I. 186 at ¶ 3). The Fourth Amended Complaint (D.I. 189)[2] asserts jurisdiction pursuant to: (1) 28 U.S.C. § 1331 by reason of a federal question; (2) 28 U.S.C. § 1337(a) by reason of a federal statute regulating commerce; (3) 28 U.S.C. § 1338 by reason of patents, copyrights, and trademarks; and (4) 28 U.S.C. § 1332 by reason of diversity of citizenship.[3] (D.I. 189 at ¶ 10). Defendants George Pazuniak, Pazuniak Law Office LLC, and O'Kelly Ernst & Joyce, LLC, formerly O'Kelly Ernst &

---

[1] The First Amended Complaint was dismissed except for Count Seven, which was construed as a claim of intentional infliction of emotional distress. (*See* D.I. 124 at p.14). The Second Amended Complaint was dismissed except for Count Five that alleged intentional infliction of emotional distress, and Plaintiff was given leave to amend claims for legal malpractice and tortious interference with contract. (*See* D.I. 185 at pp.15-20, 26).

[2] Plaintiff explains that she had previously filed a Third Amended Complaint as an exhibit to her March 15, 2017 motion for leave to amend. (D.I. 176, 178, 189 at p.2). The motion for leave to amend was dismissed without prejudice on August 10, 2017. (D.I. 184).

[3] Jurisdiction vests solely by reason of diversity of citizenship. The Fourth Amended Complaint contains only state law claims. It does not raise a federal question or a claim for violation of a federal statute regulating commerce or by reason of a patent violation claim, although the allegations relate to the parties' involvement in patent litigation.

2

Bielli, LLC,[4] jointly move for dismissal pursuant to Fed. R. Civ. P. 12(b)(6).  (D.I. 190). Plaintiff opposes.  Briefing on the matter has been completed.  (D.I. 191, 192, 195, 196, 197, 198, 199).

## BACKGROUND

Plaintiff, a California resident, is an inventor and assignee of a portfolio of dozens of patents. (D.I. 189 at ¶¶ 3, 11).  She founded three start-up companies in Silicon Valley: Pi-Net International Inc., WebXchange, Inc., and e-point, Inc.  (Id. at ¶ 11). George Pazuniak[5] is an attorney licensed to practice law in Delaware with an office in Wilmington, Delaware, and George Pazuniak Law Office, LLC, "was a law firm duly organized and existing under the laws of the State of Delaware with its principal place of business in Wilmington, DE."[6]  (Id. at ¶¶ 4-5).  O'Kelly Ernst & Joyce, LLC[7] is "a law firm duly organized and existing under the laws of the State of Delaware with its principal place of business in . . . Wilmington, DE and in Philadelphia, PA."  (Id. at ¶ 6). Plaintiff hired Pazuniak "for her patent cases . . . against many infringers in 2011, 2012 and 2013, based upon his representation that he is a 'Patent Litigator' and would provide 'Competent Counsel' to competently conduct [her] patent cases."  (Id. at ¶

---

[4] The Court will refer to this law firm by its current name, O'Kelly Ernst & Joyce, LLC or "O'Kelly Law Firm".

[5] Plaintiff refers herself as "Client" and George Pazuniak as "Counsel."  (Id. at ¶¶ 2, 4).

[6] Plaintiff refers to George Pazuniak Law Office as "Counsel's Law Firm" or "Pazuniak Law Office."  (Id. at ¶ 5).

[7] Plaintiff refers to O'Kelly Ernst & Joyce, LLC as "Counsel's Principal" or "O'Kelly Law Firm."  (Id. at ¶ 6).

3

12).[8] Plaintiff alleges that Pazuniak "(as Agent) joined Counsel's Principal during the course of patent litigation [Contrary to the 'Agreement'] by not informing Client; de facto, and Counsel and Counsel's Principal became Client's attorneys in her patent cases, as evidenced by Counsel's signature on each of the briefs filed that Counsel was from Counsel's Principal." (*Id.* at ¶ 12). With the assistance of Defendants, Plaintiff sued a number of corporations for patent infringement. The claims in this action all arise out of Defendants' representation in those patent infringement proceedings.

In the Court's ruling on Defendants' motion to dismiss the Second Amended Complaint, the allegations of intentional infliction of emotional distress survived the motion, and Plaintiff was given one final opportunity to file a motion to amend the legal malpractice and tortious interference with contract claims. (D.I. 186). Plaintiff filed a motion to amend on October 13, 2017, and attached the Fourth Amended Complaint and a red-line version of the Fourth Amended Complaint to it. (D.I. 189 & 189-1).

The Fourth Amended Complaint contains three counts. Count One, against Counsel, Counsel's Law Firm, and Counsel's Principal for tortious interference with a contract (D.I. 189 at ¶¶ 20-44, 140-44); Count Two, against Pazuniak and Defendants for intentional infliction of emotional distress (the claim that survived dismissal in the Second Amended Complaint) (*id.* at ¶¶ 45-48, 145-47); and Count Three, against Counsel and Defendants for legal malpractice/negligence/failure to provide competent representation/failure to follow client instructions/professional misconduct (*id.* at ¶¶ 49-

---

[8] It appears the date of hire was January 25, 2012, and that the clients were WebXchange, Inc., Pi-Net International, Inc., and Plaintiff. (D.I. 31-4 at p.37 (retainer agreement)).

4

56, 148-51). In addition, the Fourth Amended Complaint contains two sections that are not specifically directed to the three counts and that are found after Count Three. The two sections are the More Facts Chronological Synopsis (D.I. 189 at ¶¶ 57-82) and the Statement (and Significance) of this Case (*id.* at ¶¶ 83-139). Much of the information in these two sections is devoted to the parties' litigation in Delaware Superior Court.

Defendants move for dismissal pursuant to Rule 12(b)(6) for failure to state claims upon which relief may be granted. (D.I. 190, D.I. 191). Defendants refer to Plaintiff's failed attempts to state a claim and contend that: (1) Plaintiff filed a new complaint, but ignored the Court's prior rulings and instructions; (2) Plaintiff failed to plead any cause of action; (3) Plaintiff removed from the Fourth Amended Complaint all allegations upon which the Court relied in allowing the intentional infliction of emotional distress claim to proceed; and (4) no claims are stated against the O'Kelly Law Firm.

Plaintiff responds, "The Complaint itself states the causes of action and remedy warranting in no uncertain terms, namely: a) Infliction of emotional distress, b) Legal malpractice, c) Intentional interference with contract." (D.I. 195 at p.1).

## STANDARDS OF LAW

Defendants seek dismissal pursuant 12(b)(6) of the Federal Rules of Civil Procedure and have submitted matters of public record as well as documents referred to in the Fourth Amended Complaint in support of their motion.

> In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. A document forms the basis of a claim if the document is 'integral to or explicitly relied upon in the complaint.' The purpose of this rule is to avoid the situation where a plaintiff with a legally deficient claim that is based on a particular document can avoid dismissal of that claim by failing to attach the relied upon document. Further, considering such a

5

> document is not unfair to a plaintiff because, by relying on the document, the plaintiff is on notice that the document will be considered.

*Lum v. Bank of Am.*, 361 F.3d 217, 221-22 n.3 (3d Cir. 2004) (internal citations omitted). The documents submitted to the Court that are matters of public record and that are referred to by Plaintiff in the Fourth Amended Complaint may properly be considered in ruling on Defendants' motion to dismiss.

In reviewing a motion filed under Fed. R. Civ. P. 12(b)(6), the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Because Plaintiff proceeds *pro se*, her pleading is liberally construed and her Fourth Amended Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94.

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). I am "not required to credit bald assertions or

legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 135 S. Ct. 346, 346 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 347. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## DISCUSSION

**Incorporation by Reference.** Counts Two and Three incorporate by reference previously filed complaints, exhibits and motions filed by Plaintiff. For example, in Count Two which raises intentional infliction of emotional distress, Paragraph 46 provides, "(*See* D.I. 1, D.I. 13, D.I. 158, D.I. 175, and 176, in the section on Personal Injury/Intentional Infliction of Emotional Distress/Racial Slur/Sexual Harassment, and all Exhibits provided previously by Plaintiff, incorporated herein by reference, detail many more examples of Defendants' Intentional Infliction of Emotional Distress)." (D.I. 189 at ¶ 46). Paragraph 47 provides, "Client suffered extreme or severe emotional distress; See previous paragraph and Exhibits in D.I.s 1, 13, 158, 17[5], 176, 178." (D.I. 189 at ¶ 47). In Count Three, which alleges legal malpractice, Paragraph 51 states, "(*See* D.I.s 1, 13, 175, 176 and 178, in the section on Legal Malpractice, and all Exhibits provided

7

previously by Plaintiff, incorporated herein by reference, detail many more examples of Defendants' negligence and malpractice."). (D.I. 189 at ¶ 51). Each of the documents incorporated by reference contain numerous pages. D.I. 1, the original Complaint, is 30 pages. D.I. 13, the First Amended Complaint with exhibits, is 101 pages. D.I. 158, the Second Amended Complaint, is 153 pages with more than 400 pages of exhibits. D.I. 178, the proposed Third Amended Complaint, is 180 pages.

Rule 10(c) of the Federal Rules of Civil Procedure provides, "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion." In *Cooper v. Nationwide Mutual Ins. Co.*, 2002 WL 31478874, at *5 (E.D. Pa. Nov. 7, 2002), the Court stated: "Courts have historically been reluctant to allow an incorporation by reference if it fails to provide adequate notice of the incorporating party's claims, defenses, or factual allegations. But nothing in Rule 10(c) precludes a party from incorporating all of an earlier pleading."

A pleading containing an incorporation by reference must meet the requirements of Fed. R. Civ. P. 8(a)(2) that a claim for relief must contain a "short and plain statement of the claim showing the pleader is entitled to relief." This means that the adoption in the later pleading must provide "'a degree of clarity which enables the responding party to ascertain the nature and extent of the incorporation.'" *Cooper*, 2002 WL 31478874, at *5 (quoting *General Accident Ins. Co. of Am. v. Fidelity & Deposit Co. of Md.*, 598 F. Supp. 1223, 1229 (E.D. Pa.1984)); *see also Muttathottlil v. Mansfield*, 381 F. App'x 454, 457 (5th Cir. 2010) ("a pleading incorporating allegations from other documents must clarify which statements are to be incorporated").

Plaintiff's incorporation by reference of numerous pleadings and hundreds of pages of exhibits fails to satisfy the requirement of Rule 8(a) that the complaint contain

a short and plain statement of claims showing that Plaintiff is entitled to relief. Incorporating by references results in an 800 page long Fourth Amended Complaint, which is convoluted and full of irrelevant and previously dismissed allegations.

For example, the intentional infliction of emotional distress in Count Two incorporates sections of the original Complaint (*see* D.I. 1) that was twice amended (*see* D.I. 13, 158). Plaintiff's intentional infliction of emotional distress claims withstood Defendants' motions to dismiss the First Amended Complaint and the Second Amended Complaint. (*See* D.I. 123, D.I. 184). However, when ruling on the motion to dismiss the Second Amended Complaint, numerous paragraphs in the relevant count were dismissed, yet Plaintiff incorporates those dismissed allegations. (*See* D.I. 185 at p.22-23). She also incorporates exhibits that "detail examples" of Defendants' conduct, but the Fourth Amended Complaint does not point to any specific exhibit. Plaintiff has filed hundreds of pages of exhibits. The global incorporation by reference of these exhibits, and the failure to identify those relevant to Count Two makes it impossible to determine the nature and extent of the incorporation or for Defendants to adequately respond to Count Two. As a result, the Court does not consider the docket items and exhibits incorporated by reference in Count Two, the intentional infliction of emotional distress claim and will strike those references from the Fourth Amended Complaint.

Plaintiff also incorporates by reference the legal malpractice claim pled in both the First Amended Complaint and the Second Amended Complaint even though the Counts were dismissed for failure to provide necessary facts. Incorporating the counts dismissed in the First Amended Complaint and the Second Amended Complaint does not provide the required level of specificity and clarity. Nor does the all-encompassing incorporation by reference of documents and exhibits provide the specificity and clarity

9

necessary for Defendants adequately to respond to Count Three. Therefore, the Court does not consider the docket items and exhibits incorporated by reference in Count Three, the legal malpractice claim, and will strike those references from the Fourth Amended Complaint.

**Tortious Interference with Contract, Count One**. Count One alleges tortious interference with contract. Defendants move to dismiss on the grounds that the incomprehensible allegations fail to state any claim.

Count One identifies four contracts with which Defendants tortiously interfered: her patent contract with the United States Patent and Trademark Office ("USPTO"); her contract with appellate counsel Charlie Kulas and John Carpenter; her contract with appellate counsel Bill Weidner; and a retainer agreement with Pazuniak. (D.I. 189 at ¶¶ 20, 24, 25, 26).

Under Delaware law, to plead a tortious interference claim, Plaintiff must properly allege the existence of: "(1) a contract, (2) about which defendant knew, and (3) an intentional act that is a significant factor in causing the breach of such contract, (4) without justification, (5) which causes injury." *Bhole, Inc. v. Shore Investments, Inc.*, 67 A.3d 444, 453 (Del. 2013) (emphasis omitted). The allegations in Count One fail to plead tortious interference with contract for a number of reasons.

In attempting to state a claim, Count One co-mingles several legal theories with the tortious interference with contract claim, including, but not limited to collateral estoppel, res judicata, wrongful rulings in the JPMorgan Case, Civ. No. 12-282-RGA (D. Del.), legal malpractice, breach of contract, overt threats of libel, burden of proof, the

failure to distribute funds,[9] fraud, and constitutional violations. (D.I. 189 at ¶¶ 22, 23, 32, 33, 34, 35, 44).

Each contract must be considered separately. Plaintiff alleges that she has a patent contract with the USPTO because she "has a portfolio of several patent contract grants issued by the United States Government." (*Id.* at ¶ 20). However, "the issuance of a patent by the [USPTO] does not create a contractual relationship between the PTO and the patentee." *See Constant v. United States*, 861 F.2d 728 (Fed. Cir. 1988) (table); *Krantz v. Olin*, 356 F.2d 1016, 1020 (Cust. & Pat. App. 1966) (patent applicant "is not negotiating a contract with the Government. [Applicant] is applying for a grant in accordance with a statute under which the right to a patent depends on compliance with the statutory terms and conditions."). Plaintiff does not have a contract with the USPTO, an element required to state a claim for tortious interference with contract. Accordingly, the "patent contract with the USPTO" claim fails as a matter of law.

Count One alleges that Pazuniak tortiously interfered with two contracts between Plaintiff and her appellate counsel. It first alleges that Pazuniak repeatedly called and emailed Plaintiff's appellate counsel with overt threats of libel, scaring them away. (D.I. 189 at ¶ 34). Yet, in the same paragraph, it states that Kulas and Carpenter withdrew

---

[9] Pazuniak and his law firm filed a declaratory action in the Superior Court of the State of Delaware in and for New Castle County against Plaintiff and Pi-Net International, Inc., C.A. No. N14C-12-259 EMD, to resolve the issue of the distribution of certain funds held in an Interest on Lawyers Trust Account and a declaration of their right to recover costs for providing files to Pi-Net upon the termination of Pazuniak's and his law firm's services to Pi-Net and Plaintiff. (D.I. 192-1 at p.2). Final judgment was entered on April 17, 2018 in favor of Pazuniak and his law firm. (D.I. 199-1). The April 17, 2018 Order is currently on appeal before the Delaware Supreme Court, in *Arunachalam v. Pazuniak Law Office*, Case No. 225,2018 (Del.).

11

from their representation before the Federal Circuit because Plaintiff had not paid the attorney fees owed to them. (*Id.*). Plaintiff concludes this was a false reason to withdraw because Carpenter returned Plaintiff's retainer. (*Id.*). The Court's task is to determine whether with regard to the Kulas/Carpenter contract, Count One states a plausible claim for relief. Common sense and judicial experience suggest that attorneys do not falsely tell a court that they are withdrawing from representation because they have not been paid when some other true reason is available, but that may not be a conclusion I can reach on a motion to dismiss.

The claims related to Plaintiff's appellate lawyers fail based upon the absolute litigation privilege associated with communications made during the course of judicial proceedings. Count One alleges that Pazuniak repeatedly called and emailed appellate counsel with "overt threats of libel." (*Id.*). It alleges this occurred when Pazuniak sent an email to Carpenter, who was "Kulas' front man" and "threatened them not to file what [an attorney associated with them] had filed, but administratively incorrectly with the wrong event on CM/ECF and had been asked by [the Court of Appeals for the Federal Circuit] to refile it." (*Id.* at ¶ 34 at p. 14). It next alleges that Pazuniak emailed appellate counsel Bill Weidner and this caused him to withdraw. (*Id.*). The Court considers the two December 2014 emails (D.I. 192-4 at 1-2) from Pazuniak to Weidner provided by Defendants in support of their motion to dismiss. The Court notes that Plaintiff relies upon the emails in the Fourth Amended Complaint and also takes judicial notice that Plaintiff filed the December 12, 2014 email in *Pazuniak Law Office LLC v. Pi-Net Intern'l, Inc.*, No. CPU4-14-002727 (Del. Com. Pl.). The emails relate to litigation in the Federal Circuit as well as the Delaware Court of Common Pleas. Therein Pazuniak discusses a statement in a brief that "appears to be

12

factually inaccurate and misleading to the Court. [It is] published in a public legal document and is defamatory" to Pazuniak. (D.I. 192-4 at 2).

Count One, as directed to the contracts entered into with appellate attorneys, is based upon Pazuniak's statements and/or emails made in the course of judicial or quasi-judicial proceedings. Delaware adheres to the common law rule of "absolute privilege" that "protects from actions for defamation statements of judges, parties, witnesses and attorneys offered in the course of judicial proceedings so long as the party claiming the privilege shows that the statements issued as part of a judicial proceeding and were relevant to the matter at issue in the case." *Barker v. Huang*, 610 A.2d 1341, 1345 (Del. 1992).

"The privilege is not narrowly confined to intra-courtroom events, but extends to all communications appurtenant thereto such as 'conversations between witnesses and counsel, the drafting of pleadings, and the taking of depositions or affidavits *ex parte*.'" *Nix v. Sawyer*, 466 A.2d 407, 410 (Del. Super. 1983). Here, Pazuniak's statements and/or emails were made in the course of judicial or quasi-judicial proceedings.

"[T]he allegedly defamatory statements must have only some connection to the subject matter of the pending action." *Hoover v. Van Stone*, 540 F. Supp. 1118, 1121 (D. Del. 1982). The statements and/or emails discussed filings in the Court of Appeals and are therefore clearly connected to the then-pending appeal.

Moreover, as stated by the Delaware Supreme Court, "The absolute privilege would be meaningless if a simple recasting of the cause of action from 'defamation' to 'intentional infliction of emotional distress' or 'invasion of privacy' could void its effect. . . . To the extent that such statements were made in the course of judicial proceedings, they are privileged, regardless of the tort theory by which the plaintiff seeks to impose

13

liability." *Barker*, 610 A.2d at 1349; *see AGC Networks, Inc. v. Relevante, Inc.*, 2015 WL 1517419 (D. Del. Mar. 31, 2015) (dismissing tortious interference claim based upon "Preservation Letters" sent to third parties); *McLaughlin v. Copeland*, 455 F. Supp. 749, 752 (D. Del. 1978) (statements made by attorney entitled to absolute privilege with respect to a claim for libel and the same privilege attached with respect to a claim for malicious interference with business).

The alleged defamatory statements and/or emails are within the scope of the absolute privilege. Thus, Plaintiff's tortious interference claims as to the contracts with appellate counsel fail.

Finally, that part of Count One alleging that Pazuniak tortiously interfered with his own contract fails as matter of law. Under Delaware law, "parties cannot interfere with their contract." *WyPie Investments, LLC v. Homschek*, 2018 WL 1581981, at *14 (Del. Super. Mar. 28, 2018); s*ee also Khan v. Delaware State Univ.*, 2016 WL 3575524, at *14 (Del. Super. June 24, 2016) ("Because a claim for tortious interference cannot lie against a party to the contract, an agent to a party likewise cannot tortiously interfere with the contract, provided the agent was acting in the scope of his employment.") (citing *Nelson v. Fleet Nat'l Bank*, 949 F. Supp. 254, 262-63 (D. Del. 1996)); *Shearin v. E.F. Hutton Grp., Inc.*, 652 A.2d 578, 590 (Del. Ch. 1994) ("It is rudimentary that a party to a contract cannot be liable both for breach of that contract and for inducing that breach.").

For the above reasons, the Court will grant the motion to dismiss Count One. The Court finds amendment of this claim futile.

**Intentional Infliction of Emotional Distress, Count Two.** Count Two alleges Pazuniak and Defendants engaged in extreme and outrageous conduct with the intent

14

of causing or reckless disregard of the probability of causing emotional distress to Plaintiff. (D.I. 189 at ¶¶ 45-48). The Court previously determined that Plaintiff had stated a claim for intentional infliction of emotional distress. The allegations in Count Two of the Fourth Amended Complaint, however, differ from those previously alleged by Plaintiff. *Compare* D.I. 189 at ¶¶ 45-48 *with* D.I. 158 at ¶¶ 202-11.

In Count Two, Plaintiff alleges that Pazuniak has not returned monies to her, *see* note 9, *supra*, and threatened her new appellate counsel with libel, causing them to withdraw, *see* discussion on absolute privilege, *supra*, all of which has caused her personal harm. (*Id.* at ¶ 46). She alleges that during her JPMorgan deposition, Pazuniak "pulled her out during the deposition and used sexual profanity at her and asked her to lie," which she refused to do. (*Id.*).

"A claim for intentional infliction of emotional distress . . . requires proof that [Pazuniak] intentionally engaged in extreme or outrageous conduct that caused severe emotional distress." *Hunt ex rel. DeSombre v. State*, 69 A.3d 360, 367 (Del. 2013). "Outrageous behavior is 'conduct that exceeds the bounds of decency and is regarded as intolerable in a civilized community. It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery [.]'". *Id.* (internal citations omitted). The law is clear, however, that liability "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities . . . ." *Mattern v. Hudson*, 532 A.2d 85, 86 (Del. Super. 1987) (quoting Restatement (Second) of Torts § 46 comment d)). Under Delaware law, if properly stated, a client's claim against an attorney for sexual harassment could be the basis for a claim of intentional infliction of emotional distress. *See, e.g.*, *Brett v. Berkowitz*, 706 A.2d 509, 511, 512-13 (Del. 1998).

15

I have already ruled that the allegations regarding Pazuniak's statements and/or emails to Plaintiff's appellate counsel are protected by absolute privilege. As amended, and liberally construing the remaining allegations, Plaintiff claims that (1) Pazuniak "used sexual profanity towards her and asked her to lie" during a deposition, and (2) he sued her in State Court. With regard to the monies allegedly owed to Plaintiff and the lawsuit filed by Pazuniak in State Court, a reasonable person would not consider it extreme or outrageous to commence a lawsuit to resolve the issue of monies owed. As to the remaining allegations, that Plaintiff's attorney (i.e., Pazuniak) asked her to lie during a deposition and used sexual profanity and racial slurs[10] towards her, even if it occurred just once, the allegations suffice to state a claim for intentional infliction of emotional distress.

Therefore, the Court will deny Defendants' motion to dismiss Count Two as raised against Pazuniak. To the extent, the claim is raised against the remaining Defendants, the motion to dismiss will be granted given that they are not named in Count Two except in a conclusory manner.

**Legal Malpractice, Count Three**. Count Three is titled "Legal Malpractice/ Negligence/Failure to Provide Competent Representation/Failure to Follow Client Instructions/Professional Misconduct."[11] Defendants move for dismissal on the grounds that Count Three fails to state a claim for legal malpractice. Most notably,

---

[10] Plaintiff only alleged the racial slur if one counts the incorporation by reference. For this one allegation, I am allowing the incorporation by reference.

[11] The Fourth Amended Complaint cites "When Ineffective Assistance Becomes Malpractice." (D.I. 189 at ¶ 49). However, the Sixth Amendment right to effective assistance of counsel does not apply in civil proceedings. See Lu v. Ashcroft, 259 F.3d 127, 131 (3d Cir. 2001). Thus, the citation is of no relevance.

16

Plaintiff ignored the Court's prior rulings and did not plead facts required to state a legal malpractice claim.

Under Delaware law, a valid action for legal malpractice must pass the following three-prong test: (1) employment of the attorney; (2) neglect of a professional duty by the attorney; and (3) loss resulting from the attorney's neglect. *See Oakes v. Clark*, 2012 WL 5392139, at *3 (Del. Super.), *aff'd*, 69 A.3d 371 (Del. 2013). To sustain the loss element, a plaintiff must demonstrate that, but for the attorney's neglect, the plaintiff would have been successful. *See id.*

The Court previously dismissed Plaintiff's claim for legal malpractice for failure to state a claim upon which relief may be granted, and Plaintiff was given leave to amend. (*See* D.I.124, 125, 185, 186). Like the First Amended Complaint and Second Amended Complaint, the allegations in Count Three are primarily directed towards Pazuniak, although in many instances the allegations refer to "Counsel and Defendants."

And, as with the Second Amended Complaint, the Fourth Amended Complaint does not state whether Plaintiff, personally, or Pi-Net International, Inc., is the client who employed counsel. Plaintiff repeatedly refers to the JPMorgan Chase case, Civ. No. 12-282-RGA and the legal representation received in that case. Pi-Net, not Plaintiff, was the party in that action. In addition, Count Three refers to "all cases" filed by Counsel and Defendants, but those cases are not identified. It rehashes Plaintiff's complaints regarding the return of monies and threats of libel previously discussed in the Court's analysis of Counts One and Two.

17

When the legal malpractice claim in the Second Amended Complaint was dismissed as deficiently pled, Plaintiff was advised, "Any amended complaint should specify the litigation including the parties, case number, and court, if the litigation involves a corporation or Plaintiff individually, and identify the harm to Plaintiff or the corporation. . . . [I]f Plaintiff seeks to raise Pi-Net's . . . claims in addition to her individual claims, she should allege specifically there is a valid assignment of Pi-Net's . . . legal malpractice claims." (D.I. 185 at p.20). Plaintiff did not follow the Court's directive when she amended the legal malpractice claim. In addition, Plaintiff was advised that as a non-attorney she could not represent the interests of Pi-Net (*id.* at pp. 18-19), yet it appears that is what she is doing by referring principally to the JP Morgan Chase case, in which the only Plaintiff was Pi-Net.

Count Three is deficiently pled. Therefore, the Court will grant Defendants' motion to dismiss the claim.

Plaintiff has been given multiple opportunities to correct her pleading deficiencies, but failed to do so. Because Plaintiff made no attempt to remedy the defects as to the legal malpractice claim, despite notice and her familiarity with the pleading requirements, granting her an opportunity to amend the claim would be futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

## CONCLUSION

For the above reasons, the Court will: (1) grant Plaintiff's motion to amend complaint (D.I. 189); (2) strike allegations of incorporation by reference in Counts Two and Three of previously filed complaints, exhibits, and motions filed by Plaintiff; and

(3) grant in part and deny in part Defendants' joint motion to dismiss the Fourth Amended Complaint (D.I. 190). The only claim that remains is Count Two, intentional infliction of emotional distress, against Pazuniak.[12] The remaining Defendants and Counts One and Three will be dismissed.

An appropriate Order will be entered.

---

[12] The allegations regarding Pazuniak's statements and/or emails to Plaintiff's appellate counsel and monies owed to Plaintiff are not a basis for the intentional infliction of emotional distress claim in Count Two against Pazuniak.